## Anderson *v.* Nagle *et al.*

### Decided December 12, 1877.

1877.
Special Term.

1. A contract in writing was executed for the sale of land, before judgments were obtained against the vendor, and the deed executed in pursuance of said contract was not recorded until after the said judgments were duly docketed and the contract was never recorded. Such contract, and deed are void as to such creditors; and the land so contracted to be sold, and so conveyed is subject to the satisfaction of the judgments.

2. An authenticated copy from the recorder's docket of an official abstract of a judgment, docketed under the provisions of the 3d and 4th sections of chapter 139 of the Code, is evidence that such abstract was docketed, and when, and of notice to purchasers of land upon which the alleged judgment is claimed as a lien, when the existence of such judgment is properly proved; but where the existence of the judgment is put in issue by a distinct denial in the answer, an authenticated copy of such abstract, as docketed by the recorder, will not be received as proof of the judgment, and dispense with the necessity of producing an authenticated copy of such judgment.

3. But when the bill exhibits such authenticated copies from the recorder's docket of official abstracts of judgments so docketed, and distinctly alleges the recovery of such judgments in a court of competent jurisdiction within the State, and these facts are not controverted by the answer, they are to be taken as true for the purpose of the suit, and no proof is required to show the same.

4. Where two judgments are recovered, one in 1868 and the other in 1869, and the one last recovered is docketed in 1870, while the one first obtained is docketed in 1871; but both are docketed before a contract in writing or deed to a purchaser for valuable consideration without notice is recorded, the judgment *first* recovered though *last* docketed has priority.

5. It is error in a decree, for which it will be reversed, to order the sale of real property without fixing the amount and priorities of the liens charged upon it.

6. It is wholly unnecessary to refer a cause, in which it appears there are but two judgment liens, to a commissioner to ascertain the amount and priorities of liens, where the pleadings and proof show clearly what they are.

7. And where the court below has failed upon such pleadings and proof to ascertain the amounts and priorities of the liens under such circumstances, while the Appellate Court will reverse the decree, it may enter such a decree as the court below should have entered.

8. Where a suit in chancery is instituted to enforce a judgment lien, and the bill alleges that there is but one other judgment lien on the real estate sought to be held liable to the satisfaction of the judgment, and sets it up also as a lien on the land, tne decree should provide for the payment of both judgments, if the land is subject thereto.

An appeal from and *supersedeas* to a decree of the circuit court of Wood county, rendered at the June term 1876, of said court, in a cause in chancery, in which George W. Anderson was · plaintiff, and First National Bank of Parkersburg and Julia H. Nagle were defendants, granted upon the petition of said Julia H. Nagle.

JOHNSON, JUDGE, who delivered the opinion of the Court, furnishes the following statement of the case :

In November 1871, George W. Anderson filed his bill in the circuit court of Wood county, alleging the recovery of a judgment against A. L. Peadro, in 1868, in the circuit court of said county for $853.33, with interest and costs subject to certain credits, that an execution issued thereon, and was returned "no property found;" that said judgment was duly docketed; and exhibited the abstract thereof so docketed; that at the time said judgment was docketed, said Peadro was seized and possessed of a certain lot, to-wit, a part of "lot No. 111," in the city of Parkersburg, and exhibited the deed from Cain and wife to said Peadro therefor; that there

were no other liens on said property, as far as plaintiff was able to ascertain, except one in favor of the First National Bank of Parkersburg for $250.00, with interest and costs, an abstract of which judgment is filed with the bill; that after the docketing of the plaintiff's judgment, there was placed in the recorder's office of Wood county a deed of conveyance from said Peadro to one Julia H. Nagle for said property, which deed was recorded on the 21st day of July 1871, a copy of which conveyance was filed with the bill. The prayer of the bill is, that said Peadro, Julia H. Nagle and the said bank, be made defendants to the bill; and that they answer the same on oath; and that plaintiff might have a decree to sell said real estate for the payment of his judgment; and for general relief.

The exhibits filed with the bill and the abstracts of the judgments are as follows:

| Date of Judgment. | Name of Plaintiff. | Name of Defendant. | Am't Judgment. | When Int. commences | Costs. | Credits. |
|---|---|---|---|---|---|---|
| Wood County Circuit Court, Oct. term, 1868. | George W. Anderson. | A. L. Peadro. | $853.33 | With interest from the 31st day of August, 1865. | $7 71 | Subject to credits, $20 paid 4th Sept., 1865; $50 paid Sept. 18, '65; $50, 24th Oct.; $50, Nov. 27th, 1865; $125, Dec. 15th, and for $135, April 9th, 1866. |

Docketed June 16, 1871.

Teste:

W. H. SMITH, *R. W. C.*

Copy Teste:

W. H. SMITH, *R. W. C.*

| Date of Judgment. | Name of Plaintiff. | Name of Defendant. | Amount of Judgment. | When Interest Commences. | Costs. | Credits. |
|---|---|---|---|---|---|---|
| Wood County Circuit Court, fall term, 1869 | First National Bank of Parkersburg. | A. L. Peadro. | $250. | With interest thereon from the 25th day of August, 1868. Docketed January 10, 1870. | | |

Teste:

EDW. M. HOIT, *R. W. C.*

Copy Teste:

W. H. SMITH, *R. W. C.*

The defendant Julia H. Nagle, answered the bill, in

which she says she knows nothing of the indebtedness of A. L. Peadro, as set out in the bill, or of the liens set up against the lots purchased by her of said Peadro ; that said Peadro sold her the lot for $600.00 on the 16th day of January 1865, which contract in writing then made by said Peadro to her for the sale of said property, she exhibits with her answer ; that she had paid all the purchase money on said lot ; that as soon as she bought said lot she took possession thereof, and built a new house upon it, and has lived upon and claimed the same from that time to the present ; that said Peadro made her a deed for said property pursuant to said contract, a copy of which she says is filed with the bill ; that she is "advised by counsel, and charges, that the judgment of complainant does not constitute a lien on said lot, because said judgment was not obtained, when respondent had purchased said lot, and was in possession of the same under her contract of purchase as aforesaid ; and that said judgment was not docketed according to law until the 16th day of June 1871, and respondent's deed was admited to record on the 20th October 1870 ; and said judgment never was docketed within the time required by law." She denies that she ever had any personal knowledge whatever of said judgment and was wholly ignorant of it, until after the institution of this suit.

The defendant further says : "that although the said deed was acknowledged by said Peadro, on the 20th October 1870, before the recorder of Wood county, yet the said deed was left with said recorder by said Peadro to be recorded, and to go on record as soon as the dower was released by Mrs. Peadro, who was sick. It will be seen that the dower was released on the 26th of June 1871, and the deed recorded by the recorder on the 21st of July 1871." That she is advised that said Peadro parted with all his interest, when he signed and acknowledged the deed on the 20th of October 1870 ; and that he had no interest whatever in said lot on the 16th June

1871, when plaintiffs, judgment was recorded; that plaintiff was neither a creditor, nor subsequent purchaser without notice of respondent's rights; that the plaintiff's debt and judgment was long subsequent to the deed to respondent; she avers that she has not only an equitable, but a legal title to the said property, and that plaintiff's judgment cannot offset it, and prays that she may be hence dismissed &c. The bill was taken for confessed as to defendants Peadro and the bank; and there was a general replication to the answer of defendant Julia H. Nagle; and no depositions were taken in the cause on either side. On the 23d day of June 1876 the cause was heard on the bill taken for confessed as to the defendants who had not answered, the answer of the defendant Julia H. Nagle with general replication thereto, and exhibits filed; and was argued by counsel; and the court decreed that the judgment of plaintiff and also the judgment of the bank were liens on said lot prior to the recordation of the deed to defendant Julia H. Nagle; and that said two liens were the only liens entitled to hold said property subject to the satisfaction thereof; and that unless the said defendant Peadro, paid the plaintiff's judgment within twenty days from the time the decree was entered, or unless the said Julia H. Nagle, or some one for her, paid the same, then Dave D. Johnson, who was by said decree appointed a commissioner for the purpose, was directed to sell said property, to pay the same, &c.

From and to said decree an appeal and *supersedeas* were allowed.

*W. H. Small* and *D. H. Leonard*, for the appellant.

*John A. Hutchinson*, for the appellee.

JOHNSON, JUDGE, delivered the opinion of the Court:

The first question presented is: was the lot of ground sold and conveyed by A. L. Peadro to Julia H. Nagle, subject

to the liens of the judgments recovered by plaintiff and by the First National Bank. The judgment of plaintiff, was recovered at the October term 1868 of the circuit court of Wood county, and docketed June 16, 1871, and the judgment of the bank was recovered at the fall term 1869 of said court, and docketed January 20, 1870. The *contract* in writing for the sale of said land was made by Peadro to said Julia H. Nagle on the 16th day of January 1865, *but was not recorded;* the deed was executed pursuant to said contract on the 20th day of October 1870, and acknowledged the same day before the recorder of Wood county by A. L. Peadro; and was acknowledged before a notary public by the wife of said Peadro on the 26th day of June 1871, and was admitted to record on the 21st day of July 1871. Sections 4 and 5 of chapter 74, of the Code of West Virginia are as follows:

"Sec. 4. Any contract in writing made, in respect to real estate or goods and chattels, in consideration of marriage, or made for the conveyance or sale of real estate, or a term therein for more than five years, shall, from the time it is duly admitted to record, be as against creditors and purchasers as valid, as if the contract was a deed conveying the estate or interest, embraced in the contract."

"Sec. 5. Every such contract, every deed conveying any such estate or term, and every deed of gift, or deed of trust or mortgage, conveying real estate, or goods and chattels, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county, wherein the property embraced in such contract or deed may be."

Section 7 of chapter 139 of the Code, provides that: "No judgment shall be a lien on real estate as against a purchaser thereof for valuable consideration without notice, unless it be docketed according to the third and fourth sections of this chapter in the county wherein such real estate is, either within ninety days next after

the date of the judgment, or before a deed therefor to such purchaser is delivered for record to the recorder."

In the case of *McLure* v. *Thistle's exo'rs*, 2 Gratt. 182, it is stated, that David Agnew being the owner of a lot of ground in the city of *Wheeling*, he and his wife, by deed bearing date the 23d of December 1835, conveyed the same to John McLure, and put him in posession thereof; the privy examination of Mrs. Agnew was regularly taken on the day the deed was executed, but it was not admitted to record until the 21st of May 1842. After the execution of the deed, and when McLure was in possession of the lot, but before the deed was recorded, judgments were recovered against Agnew by several of his creditors, among others by Benjamin T. Thistle * * *. In 1843 Thistle instituted his suit in the circuit superior court of law and chancery for the county of Ohio against McLure, Agnew, and the judgment creditors of Agnew, and in his bill claimed that as the deed to McLure had not been admitted to record, until after his judgment as well as those of the other creditors, whom he named, had been obtained, and Agnew had been discharged as an insolvent debtor on his execution, they were entitled to have the lot then held by McLure applied to the satisfaction of their judgments; he therefore prayed, that the court would fix the priorities among the creditors, and that the lot might be sold, and the proceeds thereof applied to the satisfaction of their claims.

McLure answered, stating *his purchase and payment of the whole purchase money and the execution of the deed and his possession under it.*

The cause coming on to be heard, the court expressed the opinion, that the lot was subject to the liens of the judgments and directed a commissioner to ascertain the judgments which were liens upon it, their amount and priorities; and upon the coming in of the report, made a decree for the sale of the lot and the distribution of the proceeds among the creditors. Thistle having died during the pendency of the suit, it was revived in the name

1877.
Special Term.

Anderson
v.
Nagle et al.

of his executors; and then the commissioner having reported a sale of the lot, that report was confirmed and a final decree was made in the cause, upon the principles before declared."

From this decree McLure appealed and the court without delivering any opinion in the cause affirmed the decree. In the argument of the cause for the appellee, according to the report, William Smith, appellee's counsel, in his second point said : "It is said however, that although the deed is void, McLure's equitable title to the lot is good against creditors. I submit that his equitable title was merged in his legal title on the execution of the deed to him, and that in no case decided under this statute, is any countenance given to the idea that the legal and equitable title may be separated, and whilst the first is void, the latter may be valid against creditors. " This precise question arose in the next case involving the construction of the statute, *Withers* v. *Carter et al.* 4 Gratt. 407, relied upon by appellant's counsel in this case. The facts of the case were, that in 1834 William H. Triplett, by a contract under seal, sold to Jonathan Carter a tract of land in the county of Loudon containing about one hundred and sixty six acres at $18.00 per acre and put him in possession thereof. The terms of the sale were : that Carter should pay $600.00 on the first of June following, when Triplett was to convey the land by deed with general warranty ; $600.00 was to be paid on the 1st of January 1835, and the balance, on the 1st of January 1837 ; the deferred payments to be secured by deed of trust on the land. The first two payments were made by Carter and on the 15th day of January 1835, he executed his bond for the last. On the 25th of January, Triplett and wife executed a deed to Carter for the land, and acknowledged it before two justices. This deed was delivered to a son of Carter, to be delivered to the clerk of the county court of Loudon county for record, and was by him lost, and never found.

On the 27th January, Carter executed the deed of trust, as required by his contract, and that was duly recorded. On the 4th of March 1835, Triplett assigned Carter's bond for $1,791.26, to John and James Withers, to be applied in part satisfaction of an execution, which they had against him. The execution had been awarded on a forfeited forthcoming bond, which was defective for want of security, but had not been quashed, and the bond had been taken on execution, issued upon a judgment recovered by them against Triplett in 1833. The award of execution was had in January 1835, at a special term of the circuit court of Frederick county. At the same special term, a decree was entered against William S. Triplett and Grubb's administrator, as sureties of Lord, executor of Ranney, in favor of Isaac R. Ellzra and others, legatees of Ranney ; Grubb's administrator afterwards paid off this decree. In 1836, Carter filed his bill in the circuit court of Frederick county, in which he stated the facts as before given, and also that another small judgment had been recovered against Triplett by D. S. Payne & Co. previous to the judgment of Withers, or decree of Ellzra. He further stated that Grubb's administrator threatened to have an *elegit* levied upon the land purchased by him of Triplett, as Triplett's land ; and having made Triplett and wife and John and James Withers, and Grubb's administrator and others parties defendants, he prayed, that the deed of Triplett and wife, which had been lost, might be set up ; that he might be permitted to pay the balance of the purchase money into court ; that Grubb's administrator might be enjoined from proceeding to subject his land to his writ of *elegit;* and that the respective rights of himself and the defendants might be settled in such way as to protect him in the possession of his land. The defendants answered the bill ; John and James Withers relied upon their rights as assignees of Triplett to plaintiff's bond ; and they claimed that their judgment had priority over the the decree of Ellzra and others ; Grubb's administrator

claimed that the *deed from Triplett and wife to Carter, not having been recorded, the land* was *subject* to satisfy *the decree in favor of Ellzra and others which had been wholly discharged by him; and for a moiety of which Triplett was liable to him.*

By the decree, Withers and Grubb's administrator, were *enjoined from proceeding to enforce their said claims against the land purchased by Carter of Triplett.*

From this decree, John and James Withers appealed. Judge Baldwin, in delivering the opinion of the court said : "It cannot be doubted that a fair purchaser of the equitable estate, has a right to hold it against creditors of the vendee, who have not previously recovered judgments. He cannot do so, it is true, at law, which only notices the legal title, but he can in equity, which notices protects and enforces the equitable title. * * * No one supposes that our registry law requires, in relation to bargains, sales, and other conveyances of lands, tenements or hereditaments, the recordation of the executory contract. By an amendment introduced at the revisal of 1819, (1 Rev. Code p. 365, § 13), authority is given to have title bonds and other written contracts in relation to lands admitted to record in like manner as deeds for the conveyance of land, and when so admitted, they are notice to subsequent purchasers of the existence of such bond or contract, but that is the only effect of the provision, which does not avoid them, either as to purchasers or creditors, if not admitted to record. It is the deed of conveyance therefore, and that only, which the law avoids for want of recordation, and the executory contract is left untouched by the statute in the slightest degree. No deed of conveyance is necessary to confirm its validity, and how an abortive attempt to obtain a valid conveyance, can destroy the pre-existing equitable title is beyond my comprehension; nor can I conceive what merger there can be in regard to creditors, of the equitable estate in the legal title, by force of a deed which as to creditors is a blank piece of paper."

The argument of the learned judge is, that the law as it then stood, only avoided the unrecorded deed as to creditors, but did not avoid the unrecorded equitable title or contract. This opinion was pronounced in 1848; at the revisal of 1849 the law which is now section 5 of chapter 74, was enacted, and was made to apply expressly to contracts in writing, as well as to deeds, and was no doubt the result of the decree of the Court of Appeals in *Carter* v. *Withers*. The learned judge says, in the last mentioned case, in reference to the decree of the court in *McLure* v. *Thistle's ex'ors*, on page 416, "I learn it is supposed by some that the decree of this Court in *McLure* v. *Thistle's ex'ors* 2 Gratt. 182, gives countenance to the idea that though a purchaser has, by an executory contract, acquired a good equitable title to the land which, until he receives a conveyance of the legal title from the vendor, is exempt in equity from intervening judgments against the latter; yet that such equitable title will avail him nothing after he has obtained such conveyance against judgments subsequently recovered, unless the deed has been duly recorded. But it was not the intention of the Court to decide any such proposition, though the reported case without close examination, may be liable to misconstruction, from the reporter's attention not having been drawn by the court to the reason for its general affirmance of the chancellor's decree. The case was one in which there was no evidence of an executory contract or possession prior to the deed, nor was any asserted by the defendant's answer; he relied simply upon his deed, his possession under it and his payment of the purchase money. I recollect distinctly that two of the judges who sat in the case, (the President and myself) were decidedly of opinion, that if it had appeared from the record that the defendant prior to the execution of the deed had acquired by his purchase a good equitable title, he ought to be protected against the judgment and we concurred in the affirmance of the decree merely upon the ground that

there was no evidence of the defendant's right, other than the deed of conveyance." The decree as to the injunction was affirmed. The Court of Appeals of Virginia in a recent case, *Floyd, trustee* v. *Harding et als.*, 28 Gratt., has gone farther, it seems to me, in the same direction than *Withers* v. *Carter*. The facts were, that in 1856, James W. Leftwich sold to Lewis H. Turnbull, a tract of land in Bedford county. The contract was not reduced to writing, but Turnball was placed in immediate possession, and the whole of the purchase money paid by him. In January 1867, Leftwich executed to Turnbull a deed of release for the land with warranty of title. Turnbull shortly afterwards sold to Howard, and Howard in 1868, conveyed to Floyd, the appellant. In 1866 a judgment was recovered against Leftwich, the original vendor, by Board, which was duly docketed in the county court of Bedford. The statute under which this case was decided, is the same as ours; and the Court of Appeals unanimously held that as there was no written contract, the contract being verbal and the vendee in possession and the purchase money paid, such a contract was not avoided by the registration statute. Judge Staples, who delivered the opinion of the court, said : " the question presented is, whether a parol contract for the sale of land so far executed as to vest in the purchaser a valid equitable title, is good against creditors of the vendor under the statute of registration."

He further says: " But we are told, that every consideration prompting the reasons to require the recordation of deeds and title bonds, applies more strongly to mere verbal agreements for the sale of lands. A little reflection will, I think, show that this is not true, certainly not to the extent asserted in the argument. When the vendee has a deed, or other written evidence of his purchase, there is no hardship in requiring him to place it upon the record. It is gross *laches* not to do so, which the Legislature might well declare good ground of for-

feiture. But in many cases the vendee has neither deed nor title bond.

"He is often deprived of one or both, by the fraud of the vendor, or by his death, or sickness, or by some controversy in regard to the precise terms of the contract, and at last, not unfrequently, he is compelled to resort to a court of equity for redress. Such cases are constantly occurring in every community. The books abound with them. To require that such contract shall be recorded, is simply to require an impossibility. * * *

"It may be conceded, that when the parol agreement is connected with the deed, and is contemporaneous with it, it must be regarded as forming part of the same transaction. In such case possession would perhaps be considered as taken under the deed and referable to it. But where there is a parol agreement under which the purchaser takes possession, and which, of course, is valid without deed, no good reason is perceived, why the subsequent execution of a deed should either invalidate the title thus acquired, or preclude proof of it in a proper case."

In reference to the case of *Withers* v. *Carter*, the judge says: "Before closing this opinion it is proper to add a few words in reference to the case of *Withers* v. *Carter*. It is impossible to deny that much, of what is said in that case, is equally applicable to the case before us. The reasoning, which tends to show, that under the laws in force prior to 1849, the unrecorded deed being a nullity, a written executory agreement was nevertheless valid, because not affected by these laws, will equally show that a valid parol contract is now good against creditors, although never recorded, because it is not affected by the amendment now incorporated in the statute. See 2 Minor's Inst. 1027."

The court below held the land subject to the judgment; and the Court of Appeals reversed the decree. We have cited this case, not to approve it, nor to express any opinion in relation to it, but to show, that even under

the principles it lays down, as extreme as they are, there is nothing in it, under which the land, sought to be charged in the cause before us, would be exempt from the judgment liens. To say the least of it, the case of *Mc-Lure* v. *Thistle's ex'ors* declared that the statute avoided an unrecorded *deed*, and the possession under it. The principles laid down in *Withers* v. *Carter*, and *Floyd, trustee* v. *Harding*, since the amendment of the statute of 1849, renders void an unrecorded *written contract*, and a possession under it. The first case was distinctly approved by this Court, in *Murdock* v. *Welles*, 9 W. Va., 552. The case here comes within the circumstances of *Withers* v. *Carter*. There was an unrecorded deed at the time the judgments were docketed, and back of that, *a written* contract made in 1865, *under which*, by the *claim* of the answer, the defendant, Julia H. Nagle, took possession and improved the property, and had paid all the purchase money.

Even if the amendment of 1849 had never been made, the principles of *Withers* v. *Carter* would hold the lot subject to the leins of the judgments, because there is a general replication to the answer, and not a particle of proof in the record to show defendant *ever had possession at all.* But it is claimed in argument here, that there is a claim for affirmative relief in the answer, and the plaintiff not controverting the relief prayed for by a reply in writing, denying such allegations of the answer as he does not admit to be true, that according to the 36th section of chapter 125 of the Code, every material allegation of such new matter constituting a claim to affirmative relief  *  *  *  *  * shall for the purpose of the suit, be taken as true, and no proof thereof should be required. It cannot be said that there is any claim for affirmative relief. The matters relied on in the answer are of defense to the suit; there is no prayer for affirmative relief; the only prayer is that the bill be dismissed, and that she have her costs. But since the amendment of 1849, the principles of both *Withers* v.

1877.
Special Term.

Anderson
v.
Nagle *et al.*

*Carter* and *Floyd, trustee* v. *Harding et al.* would hold the lot subject to the liens of the judgment, if she had fully proved the allegations of her answer, because she relies upon the *written contract* of 1865, *her possession under it,* the improvement of the property and the payment of the purchase money. She does not claim *that back of her written contract she had a parol* agreement, under which she held the possession. The *express words of the statute* avoid both the unrecorded deed and written contract. The question does not arise here whether if she had such *parol contract* part performed, the statute would avoid that; and we do not decide that question. We think it is clear that the lot now claimed by Julia H Nagle, is subject to the liens of the judgment of the plaintiff and the First National Bank of Parkersburg. It is assigned as error by the appellant that, "there was no legal evidence of any judgment, the only evidence being the abstract from the judgment docket, kept in the recorder's office, and no certificate attested by the clerk of the circuit court of Wood county, that any such judgment was rendered by said court or is recorded therein." An authenticated copy from the recorder's docket of an official abstract of a judgment, docketed under the provisions of the 3d and 4th sections of chapter 139 of the Code of West Virginia, is evidence that such abstract was docketed and when, and of notice to purchasers of land, upon which the alleged judgment is claimed to be a lien, when the existence of such judgment is properly proved; but where the judgment is put in issue, an authenticated copy of such abstract, as docketed by the recorder, will not be received as proof of the judgment, and dispense with the necessity of producing an authenticated copy of the judgment. *Dickinson* v. *Railroad Co.,* 7 W. Va. 390.

Syllabus 2.

Syllabus 3.

But in this case the answer does not put in issue the existence of either of the judgments. The defendant in her answer says: "She knows nothing of the matters and things complained of in said bill, as to the indebtedness

of A. L. Peadro to the complainant, or of the liens set up upon the lot purchased by her of said, Peadro." This is not a denial that the judgments, as the bill alleges, were recovered as therein set forth. These facts are not contradicted in the answer. Section 36 of chapter 125 of the Code, provides that, " every material allegation of the bill, not controverted by an answer, * * * * shall for the purposes of the suit be taken as true, and no proof thereof shall be required," and she substantially admits the plaintiff's judgment. Therefore there was no necessity of exhibiting with the bill copies of the judgments, and there was no error in the decree without such proof.

It is further objected for appellant, " that the decree for sale should not have been made before referring the cause to a commissioner, to ascertain the amount and priorities of liens, and of what property the said Peadro was possessed, and upon which the said judgments were liens." It certainly was not necessary to refer the cause to a commissioner to ascertain of what property the said Peadro was possessed, and upon which said judgments were liens, in view of the fact that the bill alleges, that " the aforesaid real estate," (the lot in question) " is all the real estate that the said A. L. Peadro, was then," (at the date of the judgments) " or is now seized of." This allegation is not denied or controverted by the answer. Neither was it necessary to refer the cause to a commissioner to ascertain the liens, and fix their priorities; as the bill alleges that the two judgments set up therein are all the liens on the lot sought to be charged, and there would have been no difficulty from the bill and exhibits for the court to fix their priorities. But the court did err in its decree, in not fixing the priorities of said liens before ordering a sale of the property. *Iaege* v. *Bossieux,* 15 Gratt. 83 ; *Moran* v. *Brent,* 25 Gratt. 104 ; *Wiley* v. *Mahood,* 10 W. Va. 206; *Rohrer* v. *Traver's trustee,* 11 W. Va. 146

The decree declares, that both judgments are liens on

*1877. Special Term.*

*Anderson v. Nagle et al.*

Syllabus 6.

Syllabus 5.

1877.
Special Term.

Anderson
v.
Nagle *et al.*

Syllabus 4.

Syllabus 7-8.

the lot; but it no where says which is prior, although it decrees one to be paid, and says nothing about the payment of the other.

It is insisted in argument here, by counsel for appellant, that the lien of the bank, because it was first docketed, was prior to the lien of plaintiff's judgment, although the judgment of plaintiff was first recorded. This position is untenable. Section 5 of chapter 139 of the Code, declares, that "every judgment for money rendered, in this State heretofore, or hereafter, against any person, shall be a lien on all the real estate, of or to which such person shall be possessed, or entitled, at or after the date of such judgment, or if it was rendered in court, at or after the commencement of the term, at which it was so rendered, &c." And the 7th section provides, that it shall not be a lien on real estate against a purchaser thereof for valuable consideration without notice, unless it be docketed, &c. The 5th section certainly gives the plaintiffs here the first lien; and there is nothing in the 7th or any other section to take it away from him, if his lien was docketed within the time required by the statute as against a purchaser, &c. Both liens were docketed within the time required by the statute; and they should stand in the order of the recovering of the judgments, as far as the judgment creditors are concerned. The decree should also have provided for the payment of the lien of the bank as well as that of plaintiff. The decree for the reasons aforesaid will have to be reversed.

The decree of the circuit court of Wood county, rendered in this cause on the 23d day of June 1876, is reversed, with costs to the appellant against the appellee, G. W. Anderson; and this Court proceeding to render such decree as the circuit court ought to have rendered, it is adjudged, ordered and decreed, that the judgments of the plaintiff and the First National Bank of Parkersburg are subsisting liens upon the lot of ground in the bill and proceedings mentioned; and that the judgment

of the plaintiff constitutes the prior lien thereon; and that the contract dated the 16th day of January 1865, executed by A. L. Peadro to Julia H. Nagle, by which he sold the lot, in the bill mentioned, to said Julia H. Nagle, and the deed executed by said Peadro to said Julia H. Nagle in pursuance of said contract on the 20th day of October 1870, not being recorded until after the said judgments were duly docketed, are as to said judgments void; and that unless the defendant, A. L. Peadro or Julia H. Nagle, or some one for them, pay off and discharge the amount of both said judgments and the costs at law together with the costs of this suit, within sixty days from this time, then the commissioner, appointed by the court below, shall sell the said property to pay the same; and this cause is remanded to the circuit court for further proceedings to be had therein according to the rules and principles governing courts of equity.

The other Judges concurred.

DECREE REVERSED.