# CHARLESTON.

MARSHALL ·V. McDERMITT *et al.*

Submitted October 24, 1916.   Decided November 14, 1916.

1. ESTOPPEL—*Failure to Assert Title.*

    Upon a party to a suit to enforce liens devolves the duty to implead therein any title or equity to which he may deem himself entitled in land sought to be charged; and if he suffers confirmation of a sale made under a decree therein, without presenting his title or equity for adjudication by proper procedure, and accepts the benefits of the proceeds paid by the purchaser, the latter acquires the land exempt from such legal or equitable claim.   (p. 249).

2. SAME—*Equitable Estoppel.*

    One who knows land in which he has an equity not disclosed therein is advertised for sale under a decree entered in a suit to which he is a party, whether brought with or without his authority or knowledge, and does nothing therein to secure an adjudication of the equity claimed, will not, after confirmation of the sale and acceptance of the benefits, be entertained in an independent proceeding to assert such claim against the purchaser of the land. His inactivity or negligence operates to estop him.   (p. 253).

3. SAME—*Equitable Estoppel—What Constitutes.*

    Acceptance of the proceeds of sale, by a party to the suit, operates as an affirmation that the title has vested in the purchaser at a judicial sale; and equity will not thereafter sanction a contrary contention by such party to the detriment or prejudice of the purchaser who paid the consideration on faith in the validity of the decree of sale and confirmation.   (p. 253).

4. ASSIGNMENT FOR BENEFIT OF CREDITORS—*Trustee as "Purchaser for Value"—Recording Acts.*

    Trustees in deeds to secure creditors and the creditors secured

are purchasers for value within the provisions of our recording acts, and are entitled to their protection. (p. 253).

5. VENDOR AND PURCHASER—*Bona Fide Purchaser—Sale.*

Although accompanied by possession and improvements, an unrecorded written contract of sale of real estate confers no equities superior to the rights of a subsequent purchaser for value without notice whose deed is recorded, or an encumbrancer whose lien is docketed. (p. 253).

6. SAME—*Bona Fide Purchaser—Presumptions.*

Unless the contrary is charged, and, if denied, proved, it will be assumed that trustees and creditors secured by the trust are purchasers without notice of any pre-existent equities. (p. 253).

7. JUDGMENT—*Contracts—Scope.*

Where a court has jurisdiction, its decree operates as an adjudication of the antecedent rights of the parties thereto actually involved upon the pleadings, and also those which are determinable therein and ought to have been presented for adjudication by any party thereto. (p. 253).

Appeal from Circuit Court, Mason County.

Suit by R. E. Marshall against J. O. McDermitt and others. From decree for complainant, defendants appeal.

*Reversed and dismissed.*

*Townsend & Bock, B. H. Blagg* and *Donald O. Blagg,* for appellants.

*Musgrave & Blessing* and *Somerville & Somerville,* for appellee.

LYNCH, JUDGE:

To enforce specific performance of an unrecorded written contract for sale of real estate, entered into between him and J. O. McDermitt, R. E. Marshall brought this suit July 8, 1914. Two years later he obtained a decree granting the relief prayed; and defendants have appealed.

The language of the contract, so far as it discloses the consideration, terms of payment and the lands sold, is: "This is to certify that I have this 20th day of January, 1909, sold to R. E. Marshall a certain tract of land, known as the Dillard land, on hill above railroad, and also six acres of river

bottom on other side of railroad, and to come off the lower end of my farm. Deed to be made later when convenient to J. O. McDermitt. Purchase price $1700. Received payment of $1316.70, to deduct from purchase price''. Upon this agreement, coupled with alleged actual, continued and uninterrupted possession of the lands since February, 1909, is predicated the compulsory requirement of a conveyance to the plaintiff.

To add other defendants and enlarge the averments of the original bill, and in lieu of one of the three tracts therein described to substitute another and different tract, plaintiff filed two amended and supplemental bills, to which and to the original bill defendants demurred, and for grounds thereof alleged ambiguity in the contract terms, insufficiency of the description of the lands therein purported to be sold, laches and estoppel. In their answers they also rely on the same defensive grounds.

Defendants aver, and the testimony tends strongly to establish, the insolvency of McDermott at the time he entered into the contract of sale, and deny the right of Marshall to the relief he asks, because, if granted, he would obtain for his claim of indebtedness a preference to the prejudice of other creditors, in contravention of the provisions of chapter 74 of the Code. To their answers plaintiff did not reply either generally or specially. However, to avail as a defense, the invocation of that statute must be made within the time prescribed by it. A delay of six years renders unimpeachable a preference void at its inception. If by a transfer of his property or any part of it while insolvent McDermitt, with the knowledge and participation of Marshall, intended to prefer a debt due the latter, or did what in legal effect operated as a preference, his act in that regard would, after the lapse of one year, become valid by reason of the failure of any other creditor of the insolvent debtor to institute suit within the time required to avoid the same, notwithstanding its initial invalidity. This apparently contradictory transmutation from a void to a valid act results from the very terms of §2, ch. 74, Code.

McDermitt virtually admits his insolvency in January,

1909, and claims to have then advised Marshall he could not in justice to other creditors attempt to perform the contract of sale, as that act would involve him in litigation, the embarassment and expense of which he desired to avoid. This admission of insolvency is not controverted. Moreover, the lands claimed by Marshall were encumbered with a vendor's lien reserved by the Dillards, and also soon thereafter with other lands of McDermitt by a deed of trust to secure the payment of loans negotiated by him, one of $6,000 payable to the Bank of Grantsville and one of $3,000 to the Poca Valley Bank, and, besides others, a judgment lien approximately aggregating $20,000 recovered at the suit of the state for the use of the county court of Mason county against Marshall and others, sureties on the official bond of McDermitt as sheriff of that county for the term expiring December 31, 1908. To this action Marshall and McDermitt were defendants, one as sheriff, the other as surety on his official bond. These liens tend to demonstrate the financial delinquencies of McDermitt at the date of the sale to Marshall. It is also equally manifest they arose out of McDermitt's administration of the office, and accrued prior to the expiration of his official term.

Whether the sureties paid the judgment recovered by the county court in full or in part only is not disclosed except inferentially. Presumably, they paid it all; for later they instituted a suit in the circuit court of Mason county praying to be subrogated to the rights and equities of the lien creditor, for whose debt they were bound, in which proceeding they made parties defendant all other lien creditors, and obtained a decree ascertaining all the lands owned by McDermitt, including those claimed by Marshall, as shown by the report of the commissioner to whom the cause was referred, and directing a sale thereof to satisfy the liens so ascertained and fixed. It is not clear whether the proceeds of the lands decreed to be sold were sufficient to extinguish all the encumbrances thereon, although it is reasonably certain that out of the sale at least $3,000, and probably a greater amount, was applied to the reimbursement of the sureties who paid the county court judgment. Whatever may be the fact as to the sufficiency of the proceeds, the plaintiffs therein did obtain a

decree directing a release of the liens, thereby exempting from further liability by reason thereof the lands decreed to be sold.

For reasons later stated, it is not necessary now to determine whether, because of indefiniteness in the description of the real estate Marshall claims to have purchased, the contract is enforcible. It may, however, be said that in part at least the attempted identification of the lands evidently is obscure, and hence as to that part the contract may be too indefinite for enforcement, according to many decisions of this and other courts. But, if it be true, as alleged in the bill, that Marshall entered upon the property, and without interruption has since held possession of it, expended money in improvements thereon, and otherwise exercised the dominion and control that exemplifies complete ownership, the acts and conduct of the parties may have minimized or removed the deficiency in the description to an extent requiring a conveyance if other circumstances do not render inequitable specific performance of the contract at this time.

What may have been the equities of Marshall had he recorded his contract, or had it been verbal only, need not be considered, further than to say a valid verbal contract of sale, coupled with possession and improvements indicative of an unqualified dominion, confers equities superior to those appertaining to an unrecorded written contract under the same or similar circumstances. The claimant under a written contract may conserve his equities by recordation. The difference stated arises out of the interpretation of our statute of frauds and recording acts, as pointed out with accuracy and distinctness in *Delaplain* v. *Wilkinson,* 17 W. Va. 242; *Snyder* v. *Martin,* 17 W. Va. 276; *Pack* v. *Hansbarger,* 17 W. Va. 313; and *Anderson* v. *Nagle,* 12 W. Va. 98. The numerous other decisions cited in 8 Enc. Dig. 383 note further the same distinction. As especially pertinent to the facts before us, Judge GREEN in the Delaplain case, after stating the general rule as to the superiority of the equities of a purchaser of lands under an unrecorded written contract to the rights of subsequent encumbrancers with knowledge or notice thereof, observed: "But this equitable ground of priority

to relief is not admitted against the positive provisions of a statute'' declaring invalid as to purchasers and lien creditors an unrecorded contract or deed of conveyance. A written executory contact, not recorded, surely can not stand on a higher equitable plane than a contract carried into entire execution by deed made and delivered so as to pass the fee and not recorded. Lands conveyed by an unrecorded deed, made in conformity with an unrecorded contract in writing for the sale of land, are subject to the lien of judgments subsequently docketed against the vendor, as to which the deed and contract are void under the statute. *Anderson* v. *Nagle, supra; Floyd* v. *Harding,* 28 Gratt. 401. Trustees in a deed to secure creditors, and the creditors thereby secured, are purchasers for value, and, if without notice actual or constructive, they take and hold the land, under §5, ch. 74, Code, acquit of prior unrecorded conveyances and written contracts of sale. *Weinberg* v. *Rempe,* 15 W. Va. 829; *Harden* v. *Wagner,* 22 W. Va. 730; *Duncan* v. *Custard,* 24 W. Va. 730; *Guano Co.* v. *Heatherly,* 38 W. Va. 411.

Apparently the vital, and we think controlling question, arises out of the proceedings had in the chancery cause brought by Wood, Marshall and others, as sureties on the official bond of McDermitt, to be subrogated to the rights of the county court and to enforce the lien of the judgment recovered at the suit of the state for their reimbursement. To obviate the legal effect of his participation as plaintiff in that proceeding, Marshall now denies knowledge of the pendency thereof until after the decree of sale was entered. But not by any pleading filed therein does he deny notice or knowledge of that proceeding, or that he authorized the use of his name as plaintiff, or seek relief from its legitimate consequences. Merely as a witness he says: ''I knew nothing of it until after it was brought. They never asked me anything about it. ''I did not authorize any one to proceed with it in my name''. ''I never heard anything of it'' until after the decree was entered authorizing the release of the lien sought to be enforced therein. While on cross examination he at first denied recollection ''of any one telling him until after they said it was advertised for sale'', yet he admitted seeing the advertise-

ment in the newspaper and was aware that the tract claimed by him was advertised for sale.

By resort to this method alone he can not obtain relief from a decree entered in that cause, whether he knew it or not; and certainly not one the benefit of which he afterwards received without protest or objection, after knowledge of the decree and ample opportunity to seek relief from it.

A defendant in an action, wherein a judgment has been rendered against him upon the unauthorized appearance of an attorney, can not be discharged from liability thereon except through a direct attack against it, a collateral attack being deemed insufficient by the great weight of authority. *Wandling* v. *Straw & Morton*, 25 W. Va. 693; 3 Cyc. 559. Equally cogent reasons require the same formality where a plaintiff, whose rights and equities may be prejudiced, desires to be relieved from the consequences of an unauthorized appearance in the institution or prosecution of a suit. To obtain the alteration or modification of a decree, a notice and petition therefor, or a notice in form sufficient to constitute a petition, is essential. *Kendrick* v. *Whitney*, 28 Gratt. 646. Promptness in making the application and a just consideration of the rights of the adverse party have a controlling effect in a denial of relief where to grant it would prejudice rights subsequently acquired. 16 Cyc. 514. An unreasonable delay, operating to the embarrassment of another litigant, or to the detriment of a subsequent purchaser, will warrant denial of relief. To impeach a decree for fraud or other like causes, partaking as they do in some respects of the nature of bills of review, the proceeding must conform with sound equitable principles. Besides, the unauthorized appearance renders the attorney liable to the client if injury ensues therefrom, but not if the appearance proves beneficial to him. 4 Cyc. 967. Indeed, in some circumstances, a client is estopped to deny the authority of an attorney to represent him. *Morrow* v. *Brinkley*, 85 Va. 55.

Notwithstanding notice of the suit and the entry of the decree, Marshall did nothing to prevent sale of the lands, except to notify the prospective purchaser of the pendency and purpose of this suit and to prepare a bill praying an injunc-

tion to enjoin the sale and a notice of a motion therefor. That bill he did not file, or attempt to obtain the injunction, or carry into effect any purpose he may have had to protect himself from such embarrassment as might result from the enforcement of the decree. Nor did he in the injunction bill prepared allege lack of authority to institute and prosecute that suit in his name or for his benefit.

The inquiry then is whether or not plaintiff is estopped to deny the validity of the sale of McDermitt's lands to Town-send under the decree entered in the Wood chancery cause, to which Marshall was a party plaintiff. The commissioners appointed to execute the decree of sale experienced difficulty in securing a purchaser, after due advertisement of the property and several attempts made by them to sell at public outcry. Townsend thereupon entered into negotiations directly with McDermitt, with their knowledge and assent, to effect a purchase of the lands decreed to be sold. The avowed and undenied purpose in view in dealing directly with him, with the knowledge and acquiescence of the commissioners, was, first, to secure the joinder of Mrs. McDermitt in the deed of conveyance in order to pass her moiety in the lands conveyed by the Dillards, and, secondly, to avoid payment of commissions. But the parties treated the sale as one made under the decree. To the commissioners Townsend paid the purchase money, and they, pursuant to his insistence and under his personal observation, applied it in exoneration of the liens against the lands purchased by him. Moreover, the defendants in their answers affirm, and the affirmation stands unimpeached, that the sale was reported by the commissioners and confirmed by the court as if actually made by them pursuant to its direction. The encumbrances so discharged were numerous and large in amount. They consisted of the Dillard vendor's lien directly affecting the lands claimed by Marshall, the $9,000 due the two banks, the $20,000 recovered by the county court, and perhaps others, without payment of which he could not in any event obtain an unencumbered title.

By a decree and deed, the purchaser at a judicial sale acquires the title held by the parties to the suit in the lands sold. *Mason* v. *Patterson*, 74 Ill. 191; *Harryman* v. *Starr*, 56 Md.

63; *Peck* v. *Chambers,* 44 W. Va. 270. They included all the lands the legal title to which remained vested in McDermitt as ascertained in that cause. On Marshall devolved the duty of initiating therein such procedure as would secure an adjudication of the validity of his claim to any part of the lands so decreed, and the exoneration or exclusion of that part from the effect of the decree. That course was feasible and available. A decree in a cause operates to cure all errors except such as arise from want of jurisdiction, and, as an adjudication of the rights of the parties thereto, not alone as to such rights as are actually involved, but those which affect the equities of any party and are such as might have been adjudicated therein. 6 Enc. Dig. 341, 366; *Hudson* v. *Guano Co.,* 71 W. Va. 402, 407. Besides, a judicial sale confirmed confers upon the purchaser a vested right to the property sold, rights of which he can not be deprived except by defects rendering the decree void or ineffectual in devolution of the title. *Allison* v. *Allison,* 88 Va. 328. If the defects or irregularities are due to the inactivity or negligence of a party to the suit, or he has failed to present the equities to which he may deem himself entitled for determination when litigable therein, the title will pass to and vest in the purchaser exempt from such equities. *Klopneck* v. *Keltz,* 50 W. Va. 331; *Castleman* v. *Castleman,* 67 W. Va. 407.

One who as a party is interested in real estate sold at a judicial sale, and with full knowledge of all the essential facts, accepts without objection the benefits of the sale, the proceeds of which are applied to his relief, is estopped to question the validity of the decree. *Howery* v. *Helms,* 20 Gratt. 1; *Langhyer* v. *Patterson,* 77 Va. 470; *Robertson* v. *Smith,* 94 Va. 250. If, with knowledge of the pendency and purpose of the suit, whether authorized by him or not, he accepts the benefits of a decree rendered therein, although void, his act thereafter will be treated as an irrevocable confirmation of a sale of his lands made thereunder. Freeman on Void Judicial Sales §50. Acceptance of part of the proceeds of sale operates as an affirmation that the title has passed to the purchaser; and he can not thereafter be received to allege the contrary to the detriment or prejudice of the grantee who

paid the money on the faith of the validity of the decree. Equity does not sanction the receipt of the proceeds and retention or recovery of the land sold. Id. p. 172. Or, as said in *Smith* v. *Warden,* 19 Pa. 429, the receipt of the money, with knowledge that the purchaser is paying it upon an understanding that he is purchasing a good title, touches the conscience and therefore binds the rights of the party receiving it. Indeed, our statute is so solicitous of the rights of a purchaser at a judicial sale that it provides his title shall not fail, although the decree may afterwards be vacated and annulled for irregularities, unless they render it void. §8, ch. 132, Code. When applied to the facts of this case, these equitable principles deny right in Marshall to enforcement of the contract of sale on which he relies. Obviously he is estopped by his failure to protect his equities by an adjudication in the former suit to which he was a party.

As Townsend acquired by purchase an indefeasible title to the lands of McDermitt, acquit of the claim of plaintiff, it is not necessary to enter into prolonged discussion of the further contention that the contract, entered into between Townsend and McDermitt contemporaneously with consummation of the sale under the decree, for repurchase after the lapse of two years of the lands sold, in effect operates together with the sale as a mortgage. But that agreement on its face does not exhibit the essential elements or characteristics of an instrument of that nature. It does not, nor does any averment or proof, show it arose out of negotiations for the loan of money, or to secure a debt, or that it created the relation of debtor and creditor, or was a sale for an inadequate price, or that the parties thereto intended the instrument to operate otherwise than as a conditional sale. These are some of the features which will induce the conclusion that a deed or other agreement absolute in form is in reality a mortgage. Their absence stamps the contract as a conditional sale and not a mere security for a debt. 10 Enc. Dig. 31.

The several reasons assigned lead to the conclusion that, as the decree is erroneous, it must be reversed, and the cause dismissed.

*Reversed and dismissed.*