# CHARLESTOWN.

Howard v. Stephenson.

(English, J., Absent.)

Submitted January 25, 1889.—Decided September 16, 1889.

Parties—Receivers—Bills in Chancery—Sale—Creditors' Bill.

H., special receiver, obtained a judgment in the Circuit Court of Mason county against R. & S. He then brought a chancery suit in said Circuit Court to enforce the lien of this judgment against the lands of S. in said county. *Held—First*, it was unnecessary to make R. a defendant in this chancery suit, as in it the plaintiff sought no redress against him or his property ; *secondly*, it was unnecessary in this chancery suit to allege in the bill, that the suit, in which the judgment on the common-law side of the court was had, or this chancery suit was brought by the receiver under the direction of the court, which appointed the receiver ; *thirdly*, such suit might be brought by H. for his own benefit, and that of all other judgment-creditors of S., or he might make other judgment-creditors of S. defendants, in which case the court would have had to audit all the judgment-liens against S. before it decreed a sale of his land ; and if H. made

only S. a defendant and did not bring his suit as a creditors' bill, yet, where S. alleges that he had other judgment-creditors, the court would have converted this suit into a creditors' bill by directing a commissioner to audit all judgment-liens against S., and it would have done the same had any other judgment-creditors by petition or otherwise asked the court so to do; but, *fourthly*, if no suggestions were raised in the court, that any person other than H. claimed to have a judgment against S., the court would not make a decree directing the auditing of all liens on the land of S., but would direct a sale of the land of S., which could be ascertained without any reference of the cause to a commissioner, if the pleadings and exhibits show clearly the amount due to H., on such judgment.

Statement of the case by GREEN, JUDGE:

This was a chancery suit, brought in the Circuit Court of Mason county by H. R. Howard, special receiver of the court, for the enforcement of judgment-liens on the real estate of Hiram Stephenson. The bill filed at the April rules, 1887, stated, that the plaintiff, special receiver of the court in the case of A. Hess and Henry Hess against Gus Jordan, on the 6th of February, 1886, obtained a judgment against said defendant and one Rudolph Rothschild in the said court for $907.09 with interest thereon from February 6, 1886, till paid and the costs amountiag to $17.05. The bill further stated, that two days thereafter, on February 8, 1886, the plaintiff recovered against said defendant, Hiram Stephenson, and against Henrietta Hess, Henry Hess, Adolph Hess and Rudolph Rothschild another judgment in said court for the sum of of $868.09 with interest thereon till paid and costs amounting to $18.40. The bill also stated, that all these facts would more fully and at large appear by reference to a bill in a chancery suit filed by the said defendant, Hiram Stephenson, against said Henrietta Hess, Henry Hess, Adolph Hess and Rudolph Rothschild and the plaintiff, H. R. Howard, special receiver, and also from the Exhibits B and C filed with said bill. The plaintiff further alleged in the said bill, that each of said judgments was in full force and effect, and no part of the same had been paid; but that both said judgments were wholly unpaid. The bill further alleged, that the said Hiram Stephenson was the owner of a large amount of real estate in said county of Mason, as will more fully and at large appear by reference

to two certified copies of deeds to him, filed with the bill. The prayer of the bill was: if the said defendant, H. Stephenson, "does not pay off and discharge said two judgments with the interest and costs on the same within a reasonable time to be named by your honor, then that said real estate may be sold, and the proceeds arising therefrom be applied to the payment of said two several judgments, and for such other and further relief as he is in equity entitled to, and in duty bound your petitioner will ever pray," etc.

No answer having been filed, on the 9th of May, 1887, the court heard said cause and entered this decree: "This day this cause came on to be heard upon the bill and exhibits filed therewith, the process duly served on the defendant, Hiram Stephenson, the decree nisi and the bill taken for confessed and set for hearing by the complainant, and was argued by counsel. The court is of opinion that the plaintiff is entitled to the relief prayed for in his said bill. It is therefore ordered, adjudged, and decreed by the court, who ascertains the amount due upon the judgments mentioned in said bill in lieu of a commissioner to be $1,931.81, that the said H. R. Howard, as special receiver of A. Hess & Co., do recover of the defendant, Hiram Stephenson, the said sum, $1,931.81 with legal interest from this date till paid. And it is further adjudged, ordered and decreed that, unless the said Hiram Stephenson, or some one for him, shall, within thirty days from the rising of the court, pay to the said H. R. Howard, special receiver for A. Hess & Co., the said sum of $1,931.81 with legal interest as aforesaid, then G. P. Simpson, who is hereby appointed a special commissioner for the purpose, do proceed to sell at public auction at the front door of the court-house of Mason county, for cash as to one third of the purchase-money, and the residue in two equal instalments of one and two years, the purchaser giving bond, with good security, for the deferred instalments, and the title to be retained as a further security, the two several tracts of land of the said defendant, Hiram Stephenson, in the bill and proceedings mentioned, after publishing for four weeks notice of the time, terms and place of sale in some newspaper published in Mason county, West Virginia; and that

before proceeding to execute this decree of sale he give bond in the penalty of $2,000.00, conditioned as required by law."

On the 15th day of August, 1887, there was served on the said H. R. Howard, as special receiver, a written notice signed by the said Hiram Stephenson, that on the first day of September term, 1887, of the said Circuit Court of Mason county he would move the said court to reverse and set aside said decree of said court, rendered on May 9, 1887, for the following errors apparent on the face of the said decree and record in said cause : "Because (1) it is not true, as alleged in plaintiff's bill, that on the 6th day of February, 1886, your petitioner, as such receiver, (meaning said plaintiff herein,) obtained a judgment against the said defendants, Hiram Stephenson and Rudolph Rothschild in your Honor's court, on the law-side thereof, for the sum of $907.82 with legal interest thereon from the 6th day of February, 1886, till paid and costs amounting to $17.05. Because, (2) it is not true that on the 8th day of February, 1886, your petitioner, (meaning said plaintiff herein,) as such receiver, obtained another judgment against the said Rudolph Rothschild and Hiram Stephenson for the sum of $868.09 and legal interest thereon from the 8th day of February A. D. 1886, and costs amounting to $18.40. Because (3) there are no such judgments existing against me."

This motion, having been duly docketed was heard on the 23d day of September, 1887. The Court being of opinion that the said motion ought not to be granted, it was overruled, and the motion dismissed. This notice assumed that the judgments mentioned in the bill did not exist, because in the copy of them filed with the bill they were headed : "H. R. Howard, special receiver, &c., *vs.* Rudolph Rothschild. Debt;" whereas they were described in the bill as a judgment obtained by H. R. Howard, special receiver, against Rudolph Rothschild *et al.*, and H. R. Howard, special receiver, obtained the other judgment against Hiram Stephenson, Henrietta Hess, Adolph Hess and Rudolph Rothschild. It will be observed that, while these exhibits (copies of these judgments filed with the bill) do not show that such judgments as described in the bill were rendered, yet the rendition

of such judgments is distinctly and clearly proved by another exhibit filed with the bill. This exhibit was a bill filed in the said Circuit Court by the appellant, Hiram Stephenson, and sworn to by him, wherein he describes these judgments just as they are described by the plaintiff in his bill in this cause, and decrees were rendered in favor of said Stephenson, based upon the truth of these allegations. The attention of the court being called to this, it was bound to regard the description of these judgments set out in both bills as correct and as undisputed. The defendant below, Hiram Stephenson, has obtained an appeal and *supersedeas* from the decree of May 9, 1887, and from the order of September 23, 1887, to a refusal to set aside said decree.

*W. H. Tomlinson, J. B. Menager*, and *E. B. Knight* for appellant.

*Simpson & Howard* for appellee.

GREEN, JUDGE:

Is there any error in the decree of May 9, 1887, or in the order of September 23, 1887, dismissing the appellant's motion asking to set aside this decree at his costs? That this was the proper mode of correcting the errors in this decree, if there were any to the prejudice of the appellant, is clear from section 5, c. 134, Code W. Va., p. 743. In fact, unless such notice had been given, and such motion to correct the error in the decree of May 9, 1887, had been made in the Circuit Court, no such errors could have been considered or corrected on an appeal to this Court under said statute.

Did the court below err in considering the allegation in the bill, that the plaintiff had two judgments of the Circuit Court of Mason county against the defendant, such as are described in the bill? The fullest proof of these two judgments, as described in the bill, was furnished by the copy of the record of a suit pending in said court, brought by said defendant against the plaintiff and others, still pending, and in the bill therein, which was sworn to by said defendant, as the bill in that cause not only sets out these two judgments against the defendant, Hiram Stephenson,

the appellant, just as they are set out in the bill in the cause now before us, but also gives a full account of the origin of these debts, on which said two judgments are based. I do not see, that I can show these matters more clearly than by copying said bill, so far as it relates to said judgments, which was duly sworn to by the plaintiff, said Hiram Stephenson, the appellant, as follows :

"The bill of complaint of Hiram Stephenson against Henrietta Hess, Adolph Hess, Rudolph Rothschild, and H. R. Howard, special receiver, filed in the Circuit Court of Mason county. The plaintiff complains and says, that in the year 1884 the defendants Henry Hess and Adolph Hess, were members of a firm doing business under the name style and firm of Hess & Co.; that as such firm they carried on the business of retail merchants in the town of Point Pleasant, Mason county, West Virginia; that prior to the 21st day of June, 1884, the members of said firm became involved in litigation regarding said business, and as one of the results thereof the goods, wares and merchandise of said firm were placed in the hands of the defendant, H. R. Howard, as special receiver appointed by the court for that purpose; that on or about the 31st day of October, 1884, the said receiver sold the goods, wares and merchandise then in his hands as such receiver to the defendant Rudolph Rothschild, for the sum of $2,250.00 payable in three, six and twelve months; that said Rothschild had been a clerk in the employment of the said firm of Hess & Co. and was then and still is perfectly insolvent; that the aforesaid sale to him was effected through and by the defendants, Henry and Adolph Hess, who are brothers and were the principal members of the aforesaid firm of Hess & Co.

"Plaintiff further says, that through and by the earnest solicitations of the said Adolph Hess he was induced to join with the said defendant R. Rothschild in making three several notes payable to said defendant, H. R. Howard, in payment of said purchase-price of said goods, wares and merchandise sold to the said Rothschild as aforesaid, the said notes bearing date the 31st of October, 1884, and payable as follows, to wit:   One for the sum of $562.50 in ninety days; one for the sum of $843.75 in six months ; and one for $843.75

in twelve months—from the date, and all bearing interest from date; that, while the plaintiff appears as a joint maker of said notes, yet in truth and in fact the said Rothschild alone was principal, and the plaintiff was a surety.

"Plaintiff says he was at said time 'informed' by the said Henry and Adolph and believed, that the said Rothschild would execute to Rankin Wiley, Jr., a deed of trust upon the said goods, wares and merchandise so purchased of the said receiver for the use and benefit of the plaintiff, and for the purpose of indemnifying him against loss by reason of his said suretyship, and that plaintiff was afterwards informed and believed, that said deed of trust had been executed as promised; but he subsequently learned, that such was not the case, but that a deed of trust executed to the said Wiley as trustee upon said property instead of indemnifying this plaintiff only further secured the aforesaid receiver.

"Plaintiff further says, he is informed and believes, that the said Rothschild sold a large portion of said goods, wares and merchandise and turned over the proceeds thereof to the defendants Henrietta, Henry and Adolph Hess, and that, a short time before the said Rothschild quit business, the defendant, Henrietta Hess, began the business of merchandising with a full stock in the building formerly occupied by the firm of Hess & Co. and afterwards by the said Rothschild, with the defendants, Henry and Adolph as agents and salesmen for her.

"Plaintiff further says that about the ——— day of April, 1885, he learned that the first of the aforesaid notes had been paid off, but that no adequate preparations were being made by said Rothschild for the payment of the other two notes, one of which was then near maturity; that then he for the first time learned that he was not secured by the said deed of trust of Rankin Wiley, Jr., and that the defendant Howard informed him that he (Howard) would not enforce said deed of trust, as this plaintiff was amply financially responsible; that at the same time plaintiff also learned that the defendant Rothschild had disposed of the larger part of the stock of goods bought of the receiver, as aforesaid, and that only a very small remnant of said stock was left; that on or about the 29th day of April, 1885, under the direction

and dictation of the defendants Henry and Adolph Hess, the defendant Rothschild turned over to the said Wiley the remainder of said goods, wares and merchandise together with the accounts yet in his possession, and that on said day the plaintiff, upon the solicitation of said Henry and Adolph, and with the consent of the said Howard, received from the said Wiley the said goods, wares, and merchandise and accounts, and then and there sold the same to the defendant Henrietta Hess through her agents Henry and Adolph; and, in consideration thereof, the said Henrietta, Henry, and Adolph Hess made, signed, sealed, and delivered to plaintiff a certain writing obligatory, (a copy whereof is herewith filed, and marked 'A,') whereby, among other things, they promised and bound themselves, jointly and severally, to pay any and all such balance as might be due and unpaid of the said two last-described notes of the said Rothschild and this plaintiff to said receiver, and they also further bound themselves to save harmless this plaintiff from the payment of any part of said notes, or any costs or expenses that might be sustained by him by reason of his having signed said notes, except that the said parties were not to become liable for any lawyer fees, trustees, commissioners, or clerk hire that had theretofore accrued in relation to said wares, goods, and merchandise.

"Plaintiff further says that said receiver, as such, on the 6th day of February, 1886, obtained a judgment in the Circuit Court of said county against the said Rothschild and one of the said notes for the sum of $907.02 with interest until paid, and costs amounting to $16.20, which judgment, interest, and cost amount to the sum of $935.80; and on the 8th day of the same month said receiver obtained another judgment in the said court against the said Rothschild and this plaintiff on the other of said notes, for the sum $868.07, with interest until paid, and costs which amount to $17.55, which judgment, interest, and costs amount to the sum of $897.19. Copies of said judgments are herewith filed, and marked 'B' and 'C.'

"Plaintiff further says that the defendant Rudolph Rothschild is wholly insolvent, and a non-resident of this State, and has no property within this State subject to a levy of

execution or other process, and further says that executions have been issued on said judgments and levied on the personal property of this plaintiff; but that said executions remain unsatisfied, and said judgments are unpaid, and are a lien upon his real estate. He further says that his personal property is insufficient to satisfy said judgments or any considerable part thereof.

"Plaintiff further says he is informed and believes that said receiver is about to institute proceedings necessary to enforce his aforesaid lien upon plaintiff's said real estate, and subject it to the payment of said judgments, as he is legally entitled to do, which, if done, will work irreparable injury to this plaintiff.

"Plaintiff further says that at the time he sold the goods, wares, and merchandise to the said Henrietta Hess, as aforesaid, he is informed and believes, and so charges the facts to be, that she had on hand, and was the owner of, at least $5,000.00 worth of personal property, as her separate estate, and that at said date she had, as her own separate estate, in the storehouse occupied by her as a store in Point Pleasant, West Virginia, at least $5,000.00 worth of goods, wares and merchandise. He further says that she is still engaged in selling goods, wares, and merchandise in the said store, being the same room owned by Mrs. Sarah Hess, wife of the defendant Adolph Hess, on the east side of Main street in said town; and further says that the stock now on hand in said rooms is but a mere remnant of the aforesaid stock, and he is informed, believes, and charges will not exceed in value the sum of $1,000.00; but that what there is of it is her own separate estate. Plaintiff is also informed, believes, and charges that the residue of said stock has been sold, transferred, removed, and wasted, and the stock converted into money for the express purpose of avoiding the payment of said notes aforesaid, and the judgments obtained thereon; and that the said Henrietta Hess has no other estate or property of any kind than the aforesaid remnants of the former stock, together with the few notes and accounts of little value, unless it be cash on hand, of which this plaintiff with certainty knows nothing.

"Plaintiff says that he has received from said parties goods,

notes, checks, bills, and cash, aggregating in value the sum of $467.26, which he is to pay upon said judgments, and for which the said Henrietta, Henry, and Adolph Hess are not to be further liable, leaving a balance due on said judgments, and for which, by the provisions of said writing, they are liable, of $1,375.73, together with $100.00 costs and expenses sustained by him since the making of said writing obligatory, by reason of his having signed said notes.

"Plaintiff further says that the defendants Henry Hess and Adolph Hess are wholly insolvent, and have no property within the State upon which execution or other process could be levied, and that he is informed and believes that the defendant Henry Hess has left the State, and is now a resident of the state of Maryland.

"Plaintiff further says that the said Henrietta Hess is, and was at the time of the said purchase of goods, wares, and merchandise of this plaintiff, and at the time she signed, sealed, and delivered said writing obligatory, the wife of the defendant Henry Hess, and that all of the aforesaid goods, wares, merchandise, notes, and accounts is and was her separate estate.

"Plaintiff further says that the aforesaid mercantile business being carried on by the defendant Henrietta Hess is being grossly mismanaged, and the stock wasted; that the said Henrietta is incompetent and unable to manage such a business successfully; that she has in charge of said store the defendant Adolph Hess, who is totally unreliable in business, and unfit to have charge of said property; that at times he is physically unable to attend to said business, and leaves the store in the hands of a small boy, who is unable to transact the business, and that the defendants Henrietta and Adolph pay little or no attention to said business, and that, unless the said Henrietta and her agents and employes be restrained and enjoined from selling, removing, or otherwise disposing of said property, these defendants will have no property left from which the said balance, $1,475.73, can be made, but that the plaintiff will be compelled to pay the same at a ruinous sacrifice of his property.

"Plaintiff further says that the defendant H. R. Howard neglects and declines to take steps to collect said judgment,

or any part thereof, or any balance due thereon, from any of said defendants.

"Plaintiff further says that on the 25th day of April, 1886, he instituted this suit for the purpose of enforcing the provisions of the aforesaid writing obligatory, and for the purpose of having the aforesaid separate personal property of the defendant Henrietta Hess preserved and protected from waste and subjected to the payment of the balance of $1,475.-73, due, as aforesaid, and plaintiff is advised and believes, and so charges the facts to be, that from and after the time of the institution of this suit, for the purpose of enforcing the provisions of said writing obligatory against the parties thereto, it became an abiding lien upon all the separate personal property of the said defendant Henrietta Hess, to the extent of the sum of $1,475.73, and that said property, being so liable, should be preserved from waste, and subjected to the satisfaction of said lien, and for all other purposes for which it could be legally applied by a court of equity.

"Plaintiff therefore prays that a proper decretal order be made by your Honor, enforcing the provisions of the said writing obligatory, and that the aforesaid separate personal estate of the defendant Henrietta Hess be preserved from waste, and be subjected to the payment of the said sum of $1,475.73 and the costs of this suit; and that the said Henrietta Hess, her agents and employes, be restrained, enjoined, and inhibited from controlling, managing, selling, or otherwise disposing of said property, or any part thereof, and that a special receiver be appointed to take exclusive charge, possession, management, and control of said mercantile business, together with the goods, wares and merchandise, books, notes, and accounts owned by or belonging to the defendant Henrietta Hess, and to proceed to sell said goods, wares and merchandise for cash, and collect said notes and accounts, and apply the proceeds thereof, first, to the payment of the costs of this suit, and then to the payment of $100.00 to this plaintiff as his costs and expenses as aforesaid, and then to pay off to the said H. R. Howard, receiver, the said sum of $1,375.73, the balance due on said judgments on said notes. He also asks such other and further

general relief as the court may see fit to grant, and as in duty
bound will ever pray, *etc.* HIRAM STEPHENSON, Pltff."

Upon the filing of this bill the judge, the record shows,
entered this order :

"Upon motion of the plaintiff, and for reasons appearing,
an injunction is granted, as prayed for in plaintiff's bill,
prohibiting, enjoining, and restraining the said defendant
Henrietta Hess, her agents and employes, from removing,
controlling, managing, selling, or otherwise disposing of said
property described in plaintiff's bill, or any part thereof, as
now in the store-rooms occupied by said Henrietta Hess,
and from disposing of any of said notes and accounts referred
to in said bill as owned by her; but this order of injunction
is not to take effect until the said Hiram Stephenson, or
some one for him, give bond, with good security, in the
penalty of $200.00, before the clerk of the circuit court of
Mason county, conditional to pay all costs and damages
that may accrue to any person by reason of the granting
of this injunction, should the same be hereafter dissolved.
And upon the further motion of plaintiff, and for reasons
appearing, it is ordered that J. L. Whitten be, and is
hereby, appointed a special receiver in this case, with direc-
tions to at once take exclusive charge, possession, manage-
ment, and control of the said property and mercantile busi-
ness of the defendant Henrietta Hess, in said mercantile
business and books of said business, notes, and accounts in
said bill set out, and proceed therewith as prayed for in
said bill. And it is further ordered that the said Henrietta
Hess, her agents and employes, shall turn over and surren-
der at once to the said J. L. Whitten, special receiver as
aforesaid, all said property, books, notes, and accounts; but
said J. L. Whitten, before proceeding to act under this
order, shall give bond, with good security, in the penalty of
$1,000.00, before the clerk of the Circuit Court of Mason
county, conditioned for the faithful discharge of his duties
as such receiver, such security to be approved by the clerk
of said court. F. A. GUTHRIE, Judge 7th judicial circuit.
West Virginia."

The record shows that after the filing of this bill quoted
from above, the court on February 8th, 1886, entered the

following decree in this cause : "This cause came on this day to be heard upon plaintiff's bill, and the exhibits therewith filed, and orders and decrees made herein, and upon the process duly executed upon all the defendants except Rudolph Rothschild, who was not served with process, and upon the joint and separate answers of Henrietta Hess, Henry Hess, and Adolph Hess, and general replication thereto, and upon the bill taken for confessed as to H. R. Howard, and upon the depositions taken and filed in this cause; and, upon motion of the plaintiff, the suit is discontinued as to the defendant Rudolph Rothschild, and was argued by counsel, upon consideration of all which the court is of opinion that the plaintiff is entitled to the relief prayed for, and is entitled to have the agreement bearing date on the 29th day of April, 1885, marked 'A,' and filed with his bill, specifically enforced ; and that by virtue of said contract and agreement there is new due from the defendants Henrietta Hess, Henry Hess, and Adolph Hess the sum of fifteen hundred and twelve dollars and sixty two cents, principal and interest to date ; $100.00 part thereof, is so due and owing to the plaintiff, and the residue, $1,412.62, is due and owing to the defendant H. R. Howard as special receiver as aforesaid, and that the said amounts are liens upon the personal property of the defendant Henrietta Hess, set out and described in plaintiff's bill of complaint. It is therefore adjudged,. ordered, and decreed that the said Henrietta Hess, Henry Hess, and Adolph Hess do pay to the said Hiram Stephenson the said sum of $100.00, and that they pay to H. R. Howard, as such receiver as aforesaid, etc., to be applied upon two certain judgments, set out and described in plaintiff's bill as being held by him, the sum of $1,412.62, with interest thereon from this date until paid, and the costs of this suit, or such sum as shall be necessary to pay off said judgments within ten days from the rising of this court; and, in default thereof, that then Rankin Wiley, Jr., and J. A. Gibbons, who are hereby appointed special commissioners for the purpose, do proceed to sell such of the goods, wares and merchandise in said bill mentioned as may remain unsold, and that they shall make sale thereof at public or private sale as in their judgment will be for the best interest of the

parties, and that they proceed to collect or sell said notes and accounts in said bill mentioned, or sell and collect such part of said goods, wares, merchandise, notes, and accounts as may be necessary, with the money on hand, to pay off said debts and their interest, the costs of this suit, and expenses attending any such sales and collections; and that J. L. Whitten, who was heretofore appointed receiver in this cause, is hereby ordered to turn over to said commissioners all money or property in his hands as such receiver, and the said receiver is discharged from such receivership, and is allowed the sum of $——— as his compensation therefor, to be paid him by said commissioners as part of the costs; and the said commissioners are directed, out of the money coming into their hands from said receiver, *etc.,* the proceeds of the goods, wares, merchandise, notes, and accounts, or any other property coming into their hands as such commissioners— *First,* to pay the costs and expenses of converting said property into money, and applying it; *second,* to pay the costs of the suit, and the sum—$100.00—aforesaid to the plaintiff, with the interest thereon from this date until paid; and said commissioners, after paying the debts aforesaid, in the manner aforesaid, and the costs of the suit and expenses of sale, the residue, if any, of money or other property they shall pay over to the said Henrietta Hess. But, before executing the provisions of this decree, or making any sale or collection thereunder, said commissioners shall give bond in the· penalty of $1.500.00 before the clerk of this court, conditioned as prescribed by law, and shall report their proceedings in this court."

Upon the evidence furnished by the record, this Court, in the cause before us, on May 9, 1887, entered the decree of that date heretofore stated. It is claimed by the appellant's counsel that there is error in this decree, because the court decreed a sale of the defendant's land, first, because the bill does not conform to the statute or the West Virginia decisions as to the manner of enforcing judgment-liens, and it neither makes the proper allegations nor the necessary parties. See Code W. Va. c. 139, § 7 *et seq.* But the bill, it seems, does contain all the necessary allegations. It alleges the two judgments against the defendant in the Circuit Court of

Mason county in favor of the plaintiff; that they are in full force and effect, and that no part of either of them has been paid, but that they are wholly unpaid and due; that the defendant is the owner of real estate in said county, filing the deeds to him for such real estate to identify it clearly. The prayer was that this land be sold, and the proceeds of the land applied to the payment of the plaintiff's judgment.

It is also claimed, that the necessary parties defendant to this suit were never made defendants. First it is claimed, that, as the exhibits filed with the bill show, that the judgments, which the plaintiff seeks to enforce, were judgments not against the defendants only but also jointly against others, these others were necessary parties to this suit. The question, as stated by Barton in his Chancery Practice, 133 –138, is: "No one should be made a defendant, against whom there can be no decree or relief granted in the suit;" and Sands, in his Suit in Equity, 191, and this Court, in *Hill* v. *Proctor*, 10 W. Va. 60, lay down the rule as follows : "All persons materially interested in the subject of the controversy ought to be made parties in equity." See page 78. But as Sands says, on page 191 : "This rule, however, is restricted to those who are interested in the property which is involved in the issue, and does not extend to persons who have an interest in the point or question litigated." As in this suit the only decree asked for, or which could have been rendered, was a decision against the land of Hiram Stephenson, the defendant and appellant, to pay this plaintiff's two judgments, no decree was entered or in this suit could have been obtained against any of the other defendants in these judgments in favor of the plaintiff in the chancery suit ; and it was therefore unnecessary to make any of them defendants.

It is true that no other persons claiming liens on the land of the defendant, Hiram Stephenson, were parties to this suit either as plaintiff or as defendants. If the record shows, that there were any others, who claim liens on this land, it would have been necessary to make them parties before the land was decreed to be sold. See *Neely* v. *Jones*, 16 W. Va. 625 ; Code W. Va. c. 139, § 7. But in this case it does not appear from the record in any way, either by evidence, pleading or by suggestion to the court below in any manner,

that there were others, who claimed liens on this land, and that these leinors and their priorities and the amount of their liens would have to be ascertained, before there could be a decree to sell the land. But a plaintiff is not required to allege in his bill and prove, that there are no other lienors. It was in this case unnecessary to refer the cause to a commissioner for the purpose of ascertaining the liens on the land and their priorities, as it in no manner appeared in the record either in the pleadings or process, that there were any other lienors than the plaintiff, or any other liens on this land than those named in the bill, and these liens of the plaintiff were fully ascertained and their amount fixed and provided for in said decree of sale. In such cases the court could properly ascertain the liens,—their amounts,—without referring the cause to a commissioner for such purpose. See *Alderson* v. *Nagle*, 12 W. Va. 98, and *Bock* v. *Bock*, 24 W. Va. 586.

It does not appear, that the defendant, the appellant, had any defence, whereby he could have prevented the sale of his land to pay these judgments of the plaintiff. The court therefore properly refused to set aside the decree and properly dismissed the notice to that effect, there being in the case no surprise, mistake, accident or fraud in the entering of the decree of sale. See *Wooster* v. *Woodhull*, 1 Johns. Ch'y 539; 2 Bart. Ch'y Pr. § 242.

It is claimed however, that the plaintiff as receiver of the court had no right to bring such a suit as this without the leave of the court. But it does not appear from the record, that he did not have such leave; and when the plaintiff's authority to bring suit is not denied or disputed, it will be presumed to exist. The plaintiff in the absence of any denial of his authority to bring such suit is not required to allege or prove it.

Our conclusion therefore is, that there was no error in the decrees of the court below, and they must be affirmed, and the appellees must recover of the appellant their costs in this Court expended, and $30.00 damages.

AFFIRMED.