## CHARLESTON.

### LAMON *v.* GOLD *et al.*

Submitted March 12, 1912. Decided June 17, 1913.

1. JUDGMENT—*Lien—Enforcement.*
   When a judgment becomes barred by the statute of limitations it ceases to be a lien on the debtor's land, and a court of equity will not enforce it. (p. 621).

2. SAME—*Lien—Continuance.*
   The lien of a judgment continues so long as the right to have execution issued, or to bring an action or *scire facias* on it is not barred. (p. 621).

3. SAME—*Lien—Debtor's Departure from State.*

Notwithstanding a debtor's departure from, and residence out of the State, after a judgment has been recovered against him, may not obstruct the creditor in the enforcement of his lien, it will suspend the running of the statute and preserve the lien of the judgment. (p. 622).

(LYNCH, JUDGE, absent).

Appeal from Circuit Court, Berkeley County.

Bill by J. M. Lamon against Robert Gold and others. Decree for plaintiff, and Maria E. Janney appeals.

*Affirmed.*

*Faulkner, Walker & Woods,* for appellant.

*J. O. Henson,* for appellee.

WILLIAMS, JUDGE:

This is a judgment creditors' suit, and Maria E. Janney, a defendant and judgment creditor, has appealed from a decree overruling her exceptions to the report of a master commissioner, to whom the cause was referred, to make report of the lands owned by the judgment debtor, and the liens thereon.

In the years 1897 and 1898 a number of judgments were recovered against Robert Gold and his several indorsers on notes executed by him to different persons. Those judgments bear different dates. W. O. Nicklas, as administrator of Louisa Martin, deceasel, recovered two judgments against said Gold on the 11th of January, 1898, for $984.86, and $492.73, respectively. Maria E. Janney paid these two judgments and took an assignment of them. In November, 1897, George I. Pitzer, first indorser on a note held by the Citizens National Bank and joint judgment debtor with said Gold to said bank, having paid the judgment, instituted a suit in chancery against Gold and others, the purpose of which was to subject all his lands, except his estate in remainder in the dower lands of his mother, to the payment of the liens thereon. In that suit all his lands, except his said estate in remainder, were sold, and the proceeds derived therefrom were sufficient to pay only a portion of the liens. The purposes of that suit having been accomplished, it was retired from the docket by decree made on 30th September, 1898.

J. M. Lamon, indorser for, and joint judgment debtor with said Gold, having paid the judgment against him and his principal in favor of the Citizens National Bank, brought the present suit on the 3rd June, 1909, the purpose of which is to subject Gold's undivided one-third interest in remainder in a tract of 69 acres, it being the tract which was assigned as dower to his mother out of the lands of which his father had died seized.

More than ten years had elapsed between the return days of the last executions issued on all of the judgments against said Gold, and the bringing of the present suit, except the two judgments now held by Maria E. Janney. Executions were issued upon those two judgments on January 4, 1907, and were returned not satisfied on 4th February, 1907, which was within ten years from the return of the last executions that had been issued thereon.

Notwithstanding executions had not been issued on the prior judgments for a period of more than ten years before the suit was brought, the commissioner reported them as liens superior in dignity to the lien of the judgments held by Maria E. Janney, and she excepted to the report, and the court overruled her exceptions. Appellant's judgments are subsequent in date, but she contends that the prior judgments have not been kept alive by having executions issued thereon within the time required by section 10, chapter 139, Code 1906, while she was diligent and did keep her judgments alive. She contends that her judgments are the only existing liens.

Robert Gold was a resident of the State at the time the judgments were recovered, but some time in the year 1899 he left the State and has ever since continued to be a non-resident. He was proceeded against, in this suit, by order of publication, but before final decree he filed his answer, admitting that the judgments reported in favor of appellees had not been paid.

Relying upon *Wellon* v. *Boggs*, 45 W. Va. 620, counsel for appellees insist that the statute of limitations is purely a personal defense to the debtor, and that, so long as he is living, one judgment creditor can not rely upon it to defeat the lien of another judgment creditor. But counsel for appellant attack the soundness of that decision, and have presented very strong argument in their brief to show that it is inequitable and against the weight of authorities upon that question, and

should, therefore, be overruled. In support of their argument they cite the following cases, viz.: *Calloway* v. *Sanders*, 99 Va. 350; *McCarlnez* v. *Tyser*, 94 Va. 198; *Monk* v. *Exposition Corporation*, 111 Va. 121; *Brandenstein* v. *Johnson*, (Cal.) 73 Pac. 744; *DeVoc* v. *Runkle*, (Was.) 74 Pac. 836; *Boncofski* v. *Jackson*, (Utah) 104 Pac. 117; 19 A. & E. E. L. (2nd ed.) 146. But we do not think that a decision of this question is essential to a determination of the case, for the reason that the suit is brought to enforce liens against the real estate of the debtor; and, if the court can see that the liens ceased to exist before the bringing of the suit, it will not enforce them. The court will not enforce a right which it sees does not exist. Although section 5, chapter 139, Code 1906, creating the lien of a judgment, does not expressly limit its duration; yet, in view of other provisions of the law, the lien ceases to exist after a time, if certain requirements for keeping it alive and in existence have not been complied with. The lien of a judgment is a right created by statute, and the Legislature has prescribed conditions and requirements for the preservation of such right, and non-compliance with those requirements will operate to divest the right. Ordinarily limitations relate to, and affect the remedy without destroying the right. But a lien is a right; the enforcement of it is a remedy. If time has destroyed the lien it can not be restored by simple consent; it must be done by some kind of legal proceeding. So, while a barred judgment may furnish the basis of an action, or *scire facias* on which another judgment may be obtained, if limitation is not pleaded, it is not evidence of a lien. The creditor's right to the lien of his judgment is gone forever, when his right to sue out execution on the judgment, or to revive it by *scire facias*, is barred. In *Werdenbaugh, Admr. v. Reid*, 20 W. Va. 588, it was held that: "The lien of a judgment ceases when the right to sue out execution on the judgment, or to revive it by *scire facias* is barred by the statute of limitations." The same question was decided in *Shipley* v. *Pew*, 23 W. Va. 487; and in *Reilly* v. *Clark*, 31 W. Va. 573. In the latter case Judge SNYDER, in his opinion at page 573, says that it has been repeatedly decided and has become the settled law of this State. One who seeks the enforcement of a right must certainly satisfy the court that the right exists, and if his bill is brought to enforce

a judgment lien which the court sees does not exist, because the creditor's right to sue out execution on, or to revive, his judgment by *scire facias* is barred, it will not enforce it. It does not follow that, because a creditor obtained a judgment against his debtor, he may, at any time thereafter, enforce it as a lien against his debtor's land. `If it is more than ten years old he must show that he has kept it alive. But plaintiff alleges in his bill, and it is also an admitted fact, that Robert Gold left the State in 1899 and has ever since then been a non-resident.

This brings us to a consideration of the next question raised in the case, which is, whether the debtor's absence from the State has prevented the running of the statute of limitations, and has saved the liens of the judgment. Sections 10 and 11, chapter 139, Code 1906, prescribe limitations upon the time of issuance of an execution on a judgment, and also upon an action, suit or *scire facias* brought on a judgment within a period of ten years, from its date; or, if execution issued within two years from the date of the judgment, then in ten years from the return day of the last execution which has not been returned, or which has been returned unsatisfied. Section 11 says no execution shall issue, and no action, suit or *scire facias* shall be brought on any judgment after the time prescribed in section 10, but it contains the following provision in regard to computing the time, viz.: "the period mentioned in the fourth section of chapter one hundred and thirty-six of this Code, and any time during which the right to sue out execution on the judgment is suspended by the terms thereof, or by legal process, shall be omitted from the computation; and the sixteenth, seventeenth, eighteenth and nineteenth sections of chapter one hundred and four of this Code shall apply to the right to bring such action, suit or *scire facias,* in like manner as to any right, action, suit or *scire facias,* mentioned in those sections."

The terms of the judgments in question place no limitation upon the right to sue out execution, and we have already said more than ten years had elapsed between the issuance of execution on all of the judgments, except upon the two now owned by appellant, and the bringing of this suit. But the judgment debtor left the State in 1899 and has ever since resided elsewhere, and, therefore, counsel for appellees insist that the

debtor's becoming a non-resident after the recovery of the judg-
ments, and his continuance as such, stopped the running of the
statute, not only against their right to bring an action or *scire
facias* upon the judgment, but also against their right to sue
in equity for the enforcement of their liens. Section 18 of
chapter 104 is referred to in section 11, chapter 139, and is
expressly made a part of it. So much of said last named sec-
tion as relates to the question under consideration reads as
follows: "Where any such right as is mentioned in this chap-
ter, shall accrue against a person who had before resided in
this State, if such person shall, by departing without the same,
or by absconding or concealing himself, or by any other indi-
rect ways or means, obstruct the prosecution of such right, or
if such right has been or shall be hereafter obstructed by war,
insurrection or rebellion, the time that such obstruction may
have continued shall not be computed as any part of the time
within which the said right might or ought to have been prose-
cuted."

There is a very able and ingenious argument by counsel for
appellant, in their brief, to demonstrate that the time of the
debtor's absence from the State should not be omitted from the
computation of time, unless his absence actually prevented the
bringing of the suit. Otherwise, they say. the creditor has not
been obstructed, and the statute was intended to apply only
when there has been an actual obstruction of the right. But
the language of the statute is too plain, it seems to us, to ad-
mit of doubt, that the Legislature regarded absence from the
State, in and of itself, such an obstruction of the creditor's right
as to justify a suspension of the statute of limitation on that ac-
count, and did so suspend it. Whether, in all cases, absence
from the State does operate as an obstruction, or not, we think
the Legislature, by the clearest intendment, so regarded it. It
is put on the same footing with a party's absconding, or con-
cealing himself; and then follow these words, "or by any other
indirect ways or means, obstruct the prosecution of such right."
The words quoted clearly indicate that a debtor's departing from
the state suspends the running of the statute. It is true that
the debtor's absence did not prevent the bringing of this suit; he
was proceeded against by order of publication, and that could
have been done at any time after he became a non-resident.

The location of the land sought to be subjected to the lien conferred jurisdiction. But the statute, being designed to protect a right, is entitled to a liberal construction, and even if an actual obstruction were necessary to give it application, the obstruction of any of the creditor's remedies for the collection of his debt would be sufficient. The word *obstruct,* as here used, does not mean to prevent altogether, but it rather means to interrupt, to impede or embarrass the creditor in the pursuit of any of his remedies, whether by execution, action, *scire facias* or by suit in equity. So, while the creditors were not prevented, by Gold's absence, from proceeding to enforce their liens against his land, or from having executions issued on their judgments, they were certainly prevented from bringing an action on them, or reviving them by *scire facias,* jurisdiction of the debtor's person being essential to those remedies. Hence his absence from the State has actually prevented the judgment creditors from pursuing some of their remedies.

The lien of a judgment remains so long as the right to bring an action on it or or revive it by *scire facias* exists. If the debtor had returned to the state, at the time this suit was brought, we do not think the right of his creditors to bring an action or *scire facias* on their respective judgments, and to exclude from the period of limitation the time of his absence, can be doubted. Having such right, their liens are preserved, and may be enforced in this suit. It was not necessary to revive the judgments by actions or *scire facias* before bringing the suit. The liens of the judgments never ceased. Sections 10 and 11, chapter 139, authorize the bringing of a suit to enforce a judgment lien whenever, and as long as, the creditor has the right to bring an action or a *scire facias.* The statute treats them as alternative remedies; and, if any one of them is saved to the creditor, all are saved. The term *suit* as used in sections 10 and 11, clearly means a suit in equity for the enforcement of a judgment lien.

Finding no error we affirm the decree.

*Affirmed.*