E. E. ROBERTSON v. HENRY B. CAMPBELL *et al.*

(No. 8369)

Submitttd May 6, 1936. Decided June 9, 1936.

*F. B. Shannon* and *L. E. Given,* for appellants.
*Lillian S. Robertson,* for appellee.

KENNA, JUDGE:

E. E. Robertson brought this suit in equity in the Circuit Court of Kanawha County against Henry B. Campbell, Ora Campbell, Estaline Campbell, Galperin Music Company, Farmers & Citizens State Bank, J. M. Hamrick, Gracie Davis and Jeane McCauley. The purpose of the suit was to enforce the lien of certain judgments obtained by the plaintiff against land alleged to be owned by Henry B. Campbell, although the record legal title stands in the name of Estaline Campbell, his mother. A decree was entered upon the plaintiff's original bill taken for confessed and thereafter certain of the defendants were permitted to file their bill of review. Upon final hearing, the bill of review was dismissed. The defendants who sought the review of the default decree now prosecute this appeal.

The bill of complaint sets up certain judgments recovered by the plaintiff against Henry B. Campbell before justices of the peace of Kanawha County: one on the 13th day of August, 1903, for $18.00 and costs, one on the 2nd day of August, 1904, for $102.00 and costs, and one on the 23rd day of July, 1904, for $102.00 and costs, and avers that abstracts of all of the judgments were duly docketed in the office of the clerk of the county court of Kanawha County. The bill alleges that upon various occasions, without specifying the times, the plaintiff has had executions issued upon these judgments, all of which were returned "no property found", and that there have been no executions issued for a period of more than two years prior to the bringing of this suit. It is averred that the plaintiff, since the recovery of the judgments, but without averring when,

has at various times searched the records in the office of the clerk of the county court of Kanawha County to discover whether or not the defendant, Henry B. Campbell, owned real estate out of which the judgments could be realized, but that none was ever discovered; that the plaintiff has recently discovered that the defendant, Henry B. Campbell, is the owner of valuable real estate located in Kanawha County, specifically naming the following: (1) Lot 5, Block E in the town of Clendenin, conveyed to Estaline Campbell December 5, 1901; (2) a tract of 201 acres conveyed to Estaline Campbell December 1, 1905; (3) a one-half interest in two lots in the town of Clendenin conveyed to Estaline Campbell February 2, 1915; (4) a tract of 143 acres conveyed to Estaline Campbell April 18, 1919; (5) a part of Lots 1 and 2 of Block B in the town of Clendenin conveyed to Estaline Campbell January 27, 1915; and (6) a tract of 49 acres conveyed to Estaline Campbell April 8, 1919. The bill of complaint states, upon information and belief, that Henry B. Campbell has in his possession unrecorded deeds from Estaline Campbell for all of this land, which he has been, and still is, withholding from record for the purpose of defrauding, delaying and hindering the plaintiff in the collection of his judgments. The bill sets up three other judgments against Henry B. Campbell obtained by Farmers & Citizens State Bank, alleges upon information and belief that no other liens exist upon the property sought to be subjected, and that the rents, issues and profits thereof will not, in a period of five years, pay off and discharge the liens against it. The bill prays for a reference to a commissioner in chancery to take and report an account of the liens upon the real estate, together with their respective priorities, and that the land, or so much of it as may be necessary, be decreed to be sold in satisfaction of the liens set up.

After the bill of complaint was taken for confessed and set down for hearing, on the 22nd day of December, 1934, a default decree was entered without the taking

of proof, finding that Henry B. Campbell is the owner of all of the real estate mentioned and described in the bill of complaint, title to which he caused to be taken in the name of Estaline Campbell for the purpose of hindering, delaying and defrauding his creditors, and especially the plaintiff, E. E. Robertson. The decree finds that it is not necessary to refer the cause to a commissioner in chancery, and proceeds to fix the liens and their priorities, treating the plaintiff's liens as a single judgment in the amount of $636.63, and giving it first place. Following the plaintiff's lien in order of priority are the three judgments of the Farmers & Citizens State Bank, in the first of which, the defendant, Jeane McCauley was a co-defendant, in the second, J. M. Hamrick, and in the third, J. M. Hamrick and Gracie Davis were co-defendants. The decree recites that J. M. Hamrick was not served with process. The decree further finds that Henry B. Campbell "has been guilty of fraudulent concealment of plaintiff's cause of action" by causing the title to all of the real estate mentioned and described in the bill of complaint to remain in the name of Estaline Campbell, and proceeds, after giving a thirty-day period for redemption, to decree the sale of the land in satisfaction of the debts, appointing W. J. Daugherty a special commissioner for that purpose.

On July 26, 1935, Henry B. Campbell, Ora Campbell and Estaline Campbell tendered and asked leave to file their bill of review to the decree of sale and leave was accordingly granted. The bill of review was filed, process was directed to issue, and the effect of the decree of sale was suspended.

The bill of review sets out in full the original bill of complaint, the process thereon, and the decree of sale, and, for a re-opening and reversal of the decree of sale, relies upon the following errors apparent upon the face of the record: (1) That the plaintiff seeks to recover in his own name the entire amounts of his judgments, whereas, the first and second judgments were owned by the plaintiff and A. G. Blair; (2) that

the bill of complaint alleges that the judgments were recovered more than twenty-nine years ago, and, inasmuch as it does not allege that executions were issued within ten years of the dates of the judgments, or of any of them, they appear, according to the allegations of the bill, now to be without force and effect; (3) that the cause was not referred to a commissioner in chancery for the purpose of ascertaining the priority of the judgments and reporting thereon; (4) that the court erred in adjudging that Henry B. Campbell had been guilty of fraud that resulted to hinder, delay and defraud the plaintiff in the collection of his judgments; and (5) that the bill of complaint fails to show the dates upon which any executions, the effect of which would be to extend the life of the judgments, were issued.

E. E. Robertson filed his demurrer and answer to the bill of review at September Rules, 1935, and on October 17, 1935, an order was entered sustaining the demurrer to the bill of review, and reciting that it appearing from the answer to the bill of review, together with the exhibits, that the defendants were duly served with process on the original bill and that the proceedings in the case up to and including the decree of sale were in all respects legal and regular, therefore, the bill of review should be dismissed.

The defendants in the original bill of complaint take the position that the original bill of complaint shows upon its face that the judgments upon which it is based were, at the time the suit was brought, completely dead for all purposes because the bill of complaint shows that the judgments are twenty-nine years or more old, and fails to show that executions were issued upon them, or any of them, within ten years from their date. This showing, without more, would certainly make plaintiff's original bill of complaint bad upon demurrer under settled holdings of this court. The lien of a judgment upon land depends entirely upon the statute. *Lewis* v. *Fisher*, 114 W. Va. 151, 171 S. E. 106. Being a creature of statute, the lien of a judgment upon land ceases to exist after the

lapse of the time provided by statute for its existence to continue. *Lamon* v. *Gold,* 72 W. Va. 618, 621, 79 S. E. 728, 51 L. R. A. (N. S.) 883. Therefore, if the plaintiff's original bill of complaint shows upon its face that the ten-year period during which the lien of a judgment upon land exists from its date has expired, and fails to show the existence of any of the conditions prescribed by statute under which the lien continues beyond that period, the bill of complaint is bad on demurrer. Clearly, this bill of complaint does not show that the liens of the judgments in question were kept alive by the issuance of executions. It is true that the bill alleges that executions were issued from time to time, but this general allegation is not sufficient to show the extension of the life of a judgment lien, for the reason that the dates of the executions are not alleged, nor is it alleged upon which judgments they were issued. For all that appears from the bill of complaint, they may have issued after the expiration of ten years from the date of the judgments, or they may have been issued upon any one or more of the judgments.

But is the plaintiff's bill of complaint sufficient to invoke, for the preservation of his liens, any other statutes than those which provide for the continuance of the life of a judgment lien beyond the ten-year period by the issuance of executions? We are of the opinion that it is. Code, 38-3-19, provides, among other things, that no execution shall issue, nor any action, suit or *scire facias* be brought on any judgment in this state after the lapse of the ten-year period provided in Code, 38-3-18, except that in computing the time, sections 15, 16, 17 and 18, article 2 of chapter 55 of the Code, shall apply. Turning to section 17 of article 2 of chapter 55 of the Code, we find that it provides for the preservation of rights of action against persons who by leaving the state, absconding and concealing themselves, or *by any other indirect ways or means,* obstruct the prosecution of such rights.

This proceeding is not for the purpose of extending the life of the liens of plaintiff's judgments. It is not sought here to have an execution or a *scire facias* issued,

nor is it the purpose of this suit to recover further judgments upon the basis of the judgments already obtained by the plaintiff. It is sought here only to enforce the liens of the plaintiff's judgments against the land of the judgment debtor described in the bill of complaint. The inquiry, therefore, is to what extent, if at all, has the plaintiff been obstructed from asserting the right that is sought to be asserted in this suit.

It must be recognized that there is some incongruity of legal principles involved in the application of the statute in question. As has already been pointed out, this court has held on several different occasions that the statutes affecting the life of judgment liens go to the very existence of the lien itself and do not, in the sense that ordinary statutes of limitation do, affect merely the remedy. Yet, sections 15, 16, 17 and 18 of article 2 of chapter 55 of the Code, which section 19 of article 3 of chapter 55 of the Code ordains shall be applied to extend the life of judgment liens beyond the ten-year period, are exceptions to pure statutes of limitation designed to suspend a bar which would otherwise affect only the remedy. It has then, at times, been extremely difficult in applying the statutes limiting the life of judgment liens to avoid the confusion that arises from referring to them as statutes of limitation, and from using, in their application to the life of judgment liens or to the rights to enforce them, the phraseology ordinarily applicable to statutes of limitation as they affect the remedy only. In fact, it may be truly said that in some aspects of Code, 38-3-19, that section affects the very existence of the judgment lien itself, primarily, and that, in other aspects, it affects the remedy by which the lien of a judgment is to be enforced, primarily. It will be observed that section 19, article 3, chapter 38 of the Code provides that no execution shall issue and that no *scire facias* shall be brought upon any judgment within this state after the expiration of ten years from the date of the judgment. Both these proceedings go to the very existence of the judgment itself and are designed to continue and perpetuate it for all purposes. Neither is involved in this

proceeding. This is a suit to enforce the lien of a judgment: not a proceeding to continue or revive the judgment in toto. The same section provides that no suit shall be brought on any judgment after ten years from its date. This part of the section applies to the remedy for the enforcement of a judgment lien. As we have already seen, the section in question makes section 17 of article 2 of chapter 55 of the Code applicable, and the latter section suspends from the operation of the statute, among other periods, any period of time during which the debtor by any indirect ways or means shall obstruct the prosecution of the right. While the plaintiff had a right, at any time within ten years from their respective dates, to issue an execution on each of his judgments, that right was not obstructed. He could have brought a *scire facias,* and that right was not obstructed. What right, then, of the plaintiff which is asserted in this suit was actually obstructed? He had a right to sue the debtor in a court of equity for the enforcement of his judgment lien upon the land of the debtor. In order to do so, however, it is necessary that the debtor should have had land to which the lien of the judgment sued upon attached. It will be observed that in this case, according to the dates upon which Estaline Campbell acquired the land in question, the last four tracts that she acquired were vested in her more than ten years after the date of any one of the judgments sought to be enforced by the plaintiff. Therefore, the lien of the plaintiff's judgments did not attach to this land. The first two tracts that were vested in Estaline Campbell came into her name during the ten year period from the date of the judgments of the plaintiff. The lien of the plaintiff's judgments did attach to this land, if in fact it was the land of Henry B. Campbell. The bill of complaint alleges that it was. The bill of complaint further alleges that as to these parcels of land, the plaintiff was obstructed from enforcing the liens of his judgments because of the fact that although Henry B. Campbell was the true owner, the record title remained vested in Estaline Campbell, his mother, for

the purpose of delaying and hindering the enforcement of the plaintiff's judgment liens. We believe that the bill of complaint makes out a case of obstruction to the right of the plaintiff with reference to these two tracts that the lien of the plaintiff's judgments did actually attach to.

But it may be urged that since the very existence of plaintiff's judgments had expired with the ten-year period and that since nothing had been done by way of execution or *scire facias* to extend the very existence of the judgments, no question of remedy can arise, because there is no right to be enforced; and that to say that the time within which a suit can be brought has been extended does not reach the existence of the lien itself but only applies to a part of the remedy. This reasoning would be correct if it did not run counter to the very provisions of the statute itself. The plain inference of the phraseology of the statute is that the right to bring a suit upon a judgment lien is to continue beyond the ten-year limitation in those cases where the right of the plaintiff to bring his suit has been obstructed by the judgment debtor. To hold otherwise would be plainly to subvert the unquestioned purpose of the statute. In order to permit a suit to be brought for the enforcement of a judgment lien against the land of the judgment debtor, the lien, of course, must exist, and therefore, since that is the plain and unequivocal purpose of the statute, the lien must be held to exist and be continued beyond the ten-year period to the extent necessary to permit the purpose of the statute to be achieved. The purpose of the statute was to give the right to bring the suit to enforce a judgment after the ten-year period had elapsed from its date in those cases where there had been an obstruction by the judgment debtor, either direct or indirect. It, of course, would be vain to suppose that the statute intended to extend the remedy and at the same time to extinguish the lien upon which the remedy is to be based. If the remedy is to exist, then the lien pro tanto must exist. The statute with reference to the remedy is to be construed as an ordinary statute of limitation, and the remedy is to be

extended under the rule governing the interpretation of such statutes. However, it was the plain purpose of the legislature in extending the remedy that the right should be extended with it, and extended to the extent necessary to sustain the extension of the remedy.

In the light of what has been said, we are of the opinion that the original bill of complaint is sufficient in so far as the land conveyed in the first two deeds made to Estaline Campbell, as shown by the bill of complaint, is concerned. The bill of complaint is not sufficient in so far as its allegations relate to the land conveyed to Estaline Campbell by the last four deeds set up therein. The bill of review, therefore, should have been entertained.

The allegations of the original bill do not seem to make it appear clearly that Henry B. Campbell was the true owner of the land conveyed in the first two deeds made to Estaline Campbell at the time that the conveyances were made. This matter, however, may be reached by amendment to the original bill, since the cause is to be remanded with direction that the bill of review be entertained.

The assignment of error based upon the failure of the trial chancellor to refer the cause to a commissioner in chancery to ascertain the liens against the land to be sold and their priority, we think, under the pleadings in this case, is not well taken. Our early case of *Anderson* v. *Nagle*, 12 W. Va. 98, holds that where the bill of complaint in a creditors' suit alleges that the liens set forth in the bill of complaint are all of the liens against the land sought to be sold and the averment is not controverted, there need not be a reference to a commissioner in chancery to ascertain the liens.

In *Weinberg* v. *Rempe*, 15 W. Va. 829, 858, the rule is discussed without citing any previous cases. The case was decided in 1879, prior to the enactment of the statute which required a reference to ascertain liens before a decree of distribution could be entered in a suit brought to enforce the lien of a judgment against the land of the judgment debtor. The *Rempe* case, however, was brought by a deed of trust creditor and resulted in the applica-

tion of the rule laid down in the *Nagle* case governing suits brought for the purpose of enforcing judgment liens, doubtless, because, at the time, there was no statutory reason for distinguishing the two kinds of suits.

The rule is also discussed in *McMasters* v. *Edgar*, 22 W. Va. 673, and *Anderson* v. *Nagle* is cited and relied upon. However, since the *Edgar* case was brought for the purpose óf setting aside a fraudulent conveyance and subjecting the land in the name of the judgment debtor's grantee, and since, in that type of suit, no convening of creditors is necessary (see *Wilt* v. *Shaffer*, 117 W. Va. 291, 185 S. E. 237), it is not thought that its pronouncements upon the rule are here of any particular interest. Furthermore, it was decided before the passage of chapter 126 of the Acts. of 1882.

The next case in which the rule is mentioned seems to be that of *Bock* v. *Bock*, 24 W. Va. 586. In that case, it was stated to be the rule that unless the record showed liens upon the land sought to be sold other than those alleged in the bill of complaint, the cause would not be referred to a commissioner in chancery to ascertain the liens. *Anderson* v. *Nagle*, 12 W. Va. 98, is cited as authority for this statement. It will be observed that the rule enunciated in the *Nagle* case is quite different. The *Nagle* case holds that there need be no reference to a commissioner where the pleadings, by affirmative allegations, show all of the liens against the land to be sold, whereas, the *Bock* case holds that there need be no reference to a commissioner unless the pleadings affirmatively show the existence of liens in addition to those actually set up. The *Bock* case was decided in September, 1884, upon appeal from a decree entered in 1878. After the entry of the decree, but before the decision of the case upon appeal to this court, chapter 126 of the Acts of 1882 amending and re-enacting chapter 139 of the Code óf 1879, was passed. Since that time, the substance of this statute has been preserved through several re-enactments and is now found in Code, 38-3-11, and Code, 38-3-12. The statute, in effect, provides that there shall be no *decree of distribution* in a proceeding to subject land

of a judgment debtor to the lien of a judgment without convening the lien creditors before a commissioner in chancery and stating an account of the liens and their priority. Of course, in the *Bock* case, it was unnecessary to comment upon the existence of this statute because the decree appealed from had been entered prior to its enactment.

The next case in which the rule is commented upon seems to be that of *Howard* v. *Stephenson*, 33 W. Va. 116, 130, 10 S. E. 66. This case arose subsequent to the enactment of chapter 126 of the Acts of the Legislature of 1882 (chapter 139 of the then code). Although the statute is referred to in the opinion, it is not discussed, and the rule of the *Bock* case to the effect that it is not necessary to refer a cause, the purpose of which is to enforce the lien of a judgment upon the land of a judgment debtor, to a commissioner in chancery to ascertain liens unless it appears from some part of the record that there are other liens than those set up in the pleadings, is followed. The *Nagle* case and the *Bock* case are both cited as sustaining this pronouncement. Attention has already been directed to the fact that the *Nagle* case and the *Bock* case lay down different rules, in that the former holds that a reference is not necessary where the bill of complaint alleges that the liens therein set up are all of the liens against the land sought to be sold, whereas, the *Bock* case holds that a reference is not necessary unless it appears from the pleadings or the record of the case that there are other liens in addition to those specifically set up.

How it came about that chapter 126 of the Acts of the Legislature of 1882 was not discussed in *Howard* v. *Stephenson*, 33 W. Va. 116, 10 S. E. 66, is not clear. That act, on its face, requires a reference and convening of creditors in all suits brought for the purpose of enforcing the lien of a judgment upon land of the judgment debtor before there can be a decree *for the distribution* of the proceeds, and, after providing the method of procedure before the commissioner in chancery, pro-

vides that creditors not proving their claims shall be forever barred from participating in the proceeds of the land in so far as the other creditors of the judgment debtor are concerned. Quaere: Does this latter provision of the statute apply where reference to a commissioner has been dispensed with? The effect of this statute seems to have been ignored in the *Stephenson* case.

It is true that Code, 38-3-11, provides that there shall be no *decree of distribution* in a suit brought for the purpose of enforcing the lien of a judgment against the judgment debtor's land until after a decree of reference. The statute does not expressly state that there shall be no *decree of sale* until after reference has been made. It is perfectly apparent, however, that in the class of cases requiring a reference for the purpose of ascertaining liens and their priority, that there can be no actual adjudication of those liens and of those priorities until after reference and report. That being so, it necessarily follows that under our cases, which require an adjudication of the liens and priorities in suits of this character before a decree of sale can be entered, that any reference to a commissioner which may be necessary must be had before the decree of sale. In other words, the effect of this section is to require a decree of reference, where it is required at all, before a decree of sale. The proviso that there shall be no decree of distribution until a reference is had in those cases requiring it is intended by way of penalty for non-compliance with the statute. It is not intended to provide for decrees of reference after sale and before distribution.

It is hoped that the foregoing discussion has pointed out some of the difficulties encountered in seeking a correct decision of the question before us. It would seem that before the enactment of the statute, two statements of the rule, not essentially conflicting, but, nevertheless calculated to confuse, had been made. Subsequent to the enactment of chapter 126 of the Acts of the Legislature of 1882, there seems to have been no discussion of the effect of that statute upon the rule in question. Upon its face, it is mandatory and requires a reference be-

fore a decree of distribution in all suits brought for the purpose of enforcing the lien of a judgment against the lands of a judgment debtor. Nevertheless, this court has held that orders of reference may, under varying circumstances, be entirely dispensed with in this class of cases. This being the present status of the law in this state, regardless of our views concerning the logic of its first declaration, we feel that an entire departure from the principle involved would be unwarranted. Yet, in view of the varying statements of that principle, we are of the opinion that it should, if possible, be clarified. In the light of the terms of the statute in question, which seem to require an order of reference in all cases brought for the purpose of enforcing the lien of a judgment against the land of the judgment debtor, we think that any rule that dispenses with an order of reference in that class of cases should be so stated as that it will have no application except where it clearly appears that a decree adjudicating all of the liens against the land sought to be sold and their priorities can be entered without an order of reference. The question should not be made to depend in any measure upon the proof, because, in this type of case, the propriety and necessity for a reference should usually be determined before proof is taken. Neither should it depend upon the state of the entire pleadings, but should depend upon facts clearly set forth and of easy ascertainment. In a complicated case, it would frequently be made a matter of extreme difficulty to arrive at all of the liens and their priorities and to adjudicate them merely upon the state of the pleadings. The adjudication of liens and priorities upon the pleadings might often prove to be a more intricate operation than to adjudicate them upon the proof. We, therefore, are of the opinion that the rule should not take cognizance of the state of the proof, and, further, that it should not depend upon the state of the entire pleadings without proof. There is but one remaining basis upon which it can be predicated, and that is upon the averments of the bill of complaint alone. Therefore, we take it that the true rule should be that an order of

reference is not necessary in suits brought for the purpose of enforcing the liens of judgments against the lands of the judgment debtor, where it appears affirmatively from the allegations of the bill of complaint that there are no liens upon the land sought to be sold other than those specifically set out in the bill of complaint in such manner as that their amounts and priorities can be decreed upon the basis of those allegations alone. Where such a bill of complaint has been regularly matured, and its averments are not denied, an order of reference in the class of cases under consideration may be dispensed with: otherwise, under the statute, it is necessary, and must be made prior to a decree of sale. We are of the opinion that plaintiff's original bill of complaint meets the test herein laid down, and, therefore, that an order of reference was not necessary.

We do not regard it as necessary to discuss the assignment of error based upon the fact that the original bill of complaint seeks the enforcement of the liens of all six judgments in the name of E. E. Robertson alone, whereas, A. G. Blair, now deceased, was co-plaintiff with Robertson in two of the judgments set up in the bill of complaint. Since the cause is to be remanded with direction that the bill of review be entertained, any discrepancy along this line may be reached by amendment to the original bill of complaint or otherwise as may seem proper to the trial chancellor.

We are of the opinion that the bill of review should have been entertained, and therefore, we reverse the decree of the Circuit Court of Kanawha County and remand the cause with direction that that course be pursued in accordance with the principles herein laid down.

*Reversed and remanded.*